## GATES v. M'DANIEL AND SPURLIN.

1. G. having a public ferry established by law, M. and S. built a bridge near it, without authority, and suffered all persons to pass free of toll; whereby the profits of the ferry were lost. Held, that it was a violation of the rights of G. and that equity had jurisdiction to restrain M. and S. from using it, except for their own families.
2. As to what constitutes a town, within the meaning of the statute concerning ferries, *quaere.*

THIS was a suit in equity, tried on bill and answer in the Circuit Court of Covington county, at October term, 1827.

Samuel Gates had filed his bill in March 1827, charging, that before the sale of the public lands at that place by the United States, Thomas M'Daniel had established a ferry on the Conecuh river, below the falls, in Covington county. That when the land was sold by the government, it was purchased by several persons jointly, among whom were the complainant and defendants. That after the purchase, the owners applied to the County Court of Covington county, and obtained an order for a public ferry, at the same place at which the defendant, M'Daniel, had before kept his ferry. That a part of the land purchased was laid off in lots, for the purpose of making a town; that the whole of the land thus distributed into lots was divided by ballot among the owners; and that in the division, the complainant drew the lots attached to the ferry; that before the drawing, it had been agreed, that no ferry should be kept on any other part of the land. He alleged, that after the division, he had obtained from the County Court an order for a public ferry at the same place, in his own name. He further charged, that notwithstanding this agreement, the defendants had erected a bridge across the river on a part of the land drawn by them, very near to the ferry, on which all persons were permitted to cross, on foot, on horseback, and in carriages, free of charge, by which the profits of the ferry were entirely destroyed; although he the complainant had complied with the law in keeping a good boat and ferryman, and kept the banks in good order, &c. He also alleged, that before building the bridge, M'Daniel had made an application to the County Court, for authority to establish another ferry on said land, which had been refused. Accord-

ing to the prayer of the bill, an injunction had been grant-
ed, restraining the defendants from permitting the bridge
to be used for any other purpose than the convenience of
their own families.

The defendants, by their answer, admitted the allega-
tions of the bill, except the agreement that no ferry should
be established other than the one which had been previ-
ously authorized, which they denied.   They also denied
that the banks leading to the complainant's ferry had been
put in good order, and insisted that wagons had been
compelled to unload before they could get up the banks;
and that the complainant himself had, in some instances,
used the bridge.

On the hearing in the Circuit Court, the injunction was
dissolved, and bill dismissed with costs, on the ground
that the statute prohibiting the establishment of ferries
within two miles of a ferry already established, did not
embrace bridges; and also that it contained an exception
as to ferries at or near a town.

The complainant appealed from this decree, and insisted
that it was erroneous.

SHORTRIDGE, for the appellant.   The bridge was both
a public and private nuisance.   It was a public nuisance,
because it was unauthorized by law, and it obstructed the
Conecuh river, which was declared by statute to be, be-
low the falls, a navigable stream and public highway. [a]   As
a public nuisance, it was liable to be abated.   Its erec-
tion violated a penal law, [b]  because it was not allowed by
the County Court; and this, whether the stream was navi-
gable or not.   It was a private nuisance, because it de-
stroyed the profits of the ferry of Gates, the complainant;
in which he had a legal vested right. [c]   Courts of Chance-
ry will restrain the injury occasioned by a nuisance, on
the ground that it is better to prevent the injury, than to
redress it afterwards. [d]   As to the town, none was ever
incorporated there, and judicially, it cannot be considered
as such.

VANDEGRAAFF and PARSONS, for the defendants, cited
Co. Lit. 115, 10 Mass. Rep. 71, &c.

By JUDGE TAYLOR.   The statute of 1820, section
17 provides, "that no public ferry shall be established
within less than two miles by water, of any ferry already
established, unless on any river at or within two miles of
any town."   And by the 20th section of that act, it is

a Act of 1821,
Laws of Ala.
717.
b Laws of Ala.
397, 8.

c 3 Bl. Comm.
219. 2 Roll.
Abr. 140. 1
Haywood's
R. 457.
d 6 John. Ch.
R. 439, 497.
1 John. Ch.
R. 611.

declared, "that if any person or persons shall establish a public ferry or a public road, toll-bridge, or causeway, contrary to the provisions of this act, he or they shall forfeit and pay five hundred dollars" &c. The meaning of this last section clearly is, if a toll-bridge &c. should be established without an order of Court, then the forfeiture shall be incurred. But as this is not a toll-bridge, it does not come within the words of the statute, which is penal and must be strictly construed.

What is the reason that persons are prohibited from establishing a public ferry within two miles of another? Clearly because the owner of the first has entered into onerous engagements when he obtained the order to establish his ferry. He has became bound to keep good boats, constant attendance, &c. this requires that he should receive compensation, and it is important to the community that he should observe faithfully the engagements he has entered into. Unless he has some such protection, his ferry will become profitless, of course will be neglected, and travellers and others meet with great delays. But will the object of the general assembly in affording this protection be defeated by the erection of a bridge within the prohibited distance? Certainly, much more effectually than by establishing a ferry. It is said though that in the record, there is some showing that this place came within the exception, as there was a town where this bridge is built. I am far from being satisfied that there was a town within the meaning of the act; but it is a sufficient reply to this objection, that this bridge was not established by order of the County Court.

Apart from all statutory provisions, except those which relate to the establishment of the ferry, I am decidedly of opinion that the defendants had no right to build a public bridge within the immediate vicinity of the ferry, calculated to destroy the profits of the ferry. The complainant had regularly made his application to the County Court, entered into bond as the law directs, and was liable to be sued on that bond if he failed to comply with its conditions: certainly then he must receive the protection which he had a right to expect when he gave this bond, and without which it will not be in his power to fulfil its conditions. In a case reported in 1 Johnson's Chancery Reports, *a* it is determined that "an injunction will be granted to secure to a party the enjoyment of a privilege confered by statute, of which he is in the actual pos- *a* Page 611,

session, and when his legal title is not put in doubt. As when a turnpike company, incorporated with the exclusive privilege of erecting toll-gates and receiving toll, had duly opened, and established the road with gates, &c. and certain persons with a view to avoid the payment of toll, opened a by road near their turnpike, and kept it open, at their own expense, for the use of the public, by which travellers were enabled to avoid passing through the gates, and paying toll to the plaintiff; the Court granted a perpetual injunction to prevent the defendants from using or allowing others to use such road, and ordered the same to be shut up. *a* This case is so precisely in point, that it is needless to comment upon it.

*a* See also 1 Haywood 457.

The decree of the Court below must be reversed; and this Court proceeding to render such decree as should have been rendered below; it is ordered, adjudged, and decreed, that the injunction be reinstated and perpetuated, and that the defendants pay the costs of the suit.

JUDGE CRENSHAW, not sitting.