HALL, et al. *vs.* RAGSDALE.

1. While the construction of roads, in the vicinity of a turnpike, established by charter, will not be permitted, where *intended* to diminish the profits of such turnpike; yet a community in the neighborhood of a turnpike, will not be restrained from the construction of roads, obviously demanded by the situation of the country, and the wants of the neighborhood.

This was a bill in chancery, filed in Marion Circuit Court, by William H. Ragsdale, against Mathew McCollum, Benjamin Harris, David Kennedy, James Ormond, Robert Elliott, Morris Hall, Robert Taylor, Oliver Woods, David Hawkins, and Joseph Franks.

The object of the bill was to enjoin the use of a road, which the defendants had made, and were using, as was alleged, to the detriment of the complainant's turnpike. By the bill, it was alleged—that in 1826, an act of the Legislature of the State, was passed, authorising the said complainant and his associates, to open and turnpike a certain road ; which, individually, he had commenced and completed, according to the requirements and provisions of the charter. That, as directed by the same, toll-gates upon said road had been erected. That the said road was the nearest, most safe and best route, (to the place where leading,) and that the same had been continued in fine order and repair, agreeably to the provisions of the charter. That notwithstanding the great expense at which said turnpike, had been completed, the said defendants, for the purpose of injuring the complainant, and in order to render va-

lueless the said turnpike, and destroy the profits there-
of,—had caused to be opened a private road, or way,
commencing at a distance of about four miles north
of where the said turnpike began, and intersecting
the road on which the same was built, about eight
miles south of the termination of the said turnpike:
which road, so opened by the said defendants, ran
nearly parallel with the turnpike. That the said
defendants had endeavored to obtain an order from
the County Court of Franklin, to authorise said pri-
vate road to be opened, and constituted a public
highway. That the defendants having failed to pro-
cure such order, still kept open the said road, of
their private authority ; and were in the habit of
falsely representing to travellers and others, that the
said road, was the best and most safe route ; thus per-
suading them to abandon the turnpike, to the great
injury of the complainant. That a part of said pri-
vate road, which ran through Marion county, had
been, at the instance of the defendants, by the Coun-
ty Court of that county, established as a public road.
That the defendants were doing all in their power to
injure the complainant, by the opening and keeping
in repair of the said road; and by exciting the pre-
judice of the neighborhood against the said turnpike;
and causing it to be believed, that the said private
route was the best : whereas, the said private road
was in no way called for by the wants of the neigh-
borhood, but designed solely to injure the complai-
nant, and destroy the profits of the aforesaid turn-
pike.

The bill therefore prayed an injunction, restrain-
ing the said defendants, from opening, using, or re-
pairing said road ; and that the same be forever clos-

ed; and that the Commissioners' Court be enjoined from appointing overseers thereon; and from causing any other road to be opened, which might tend to affect the privileges of the complainant's charter, &c.

The chancellor having granted an order for an injunction, and subpoenas having issued, the defendants answered.

The answer of Kennedy, admitted having assisted the defendants in opening the private road complained of, but averred, it was necessary for the convenience of the neighborhood, in carrying their produce to market: and denied the intention of injuring the complainant, in the privileges of the turnpike.

The answer of Hall and Elliott admitted, that the complainant was possessed of a charter, for the erection of a turnpike; but denied, that he had complied with the requisites of the statute; charged a fraudulent and designing course upon him, and averred, that he had caused toll-gates to be formed, without a compliance with the provisions of the charter. That being the judge of the County Court of Marion, he had made sundry orders to himself, in violation of the charter; and in relation to the said turnpike—all, as was alleged, in contradiction to the laws of the land.

They admitted, that an order had been made by the County Court of Marion, authorising the opening of a road, under which these defendants had acted; and that the said road had been duly opened under the authority of the said Court: they, however, denied that it ran parallel with the turnpike of the complainant, or was such a road as described in his

bill. They alleged, that this road was absolutely essential to the convenience of the neighborhood, through which it ran—that it was a direct road to the seat of justice, and to the market of the county. This answer denied any attempt to create excitement, &c.; and demurred to the bill.

The answer of Taylor and Ormond, was substantially the same as that of Hall and Elliott, and they also demurred.

The answer of Woods, Hawkins and Franks, admitted that they were commissioners of roads and revenue in Marion County. That the said Turnpike had been built by the complainant, under a charter: that the private road, alluded to in the bill, had not been made: denied all improper influence—all acts and doings tending to the injury of the complainant; and prayed to be dismissed.

The testimony of a number of witnesses, examined in the case, established the facts, that some efforts had been made to give character to the new road; and that it was much travelled: that many persons would have travelled the turnpike, if the new road had been existing. That the cost of the turnpike was about eighteen hundred dollars. That the new road was necessary to the neighborhood; and if discontinued, a hardship would result. That the turnpike was not in the best order, but had been received by commissioners, appointed to examine it.

At August term, 1831, a final decree was had, by which it was ordered and adjudged, that so much of the injunction as related to a part of the road, laid out and opened under an order of the County Court of Marion, be dissolved: that further, the complainant's bill be dismissed in respect to those defendants

who were commissioners of revenue and roads, of that County : and that, as to the other defendants, the injunction be perpetuated ; and that they be inhibited from opening that part of said road not established by authority of the County Court, and from using, or permitting others to use the same, or any part thereof ; and that the costs be divided. And the defendants took a writ of error.

*P. Martin,* for the plaintiff in error.—The decree of the chancellor was evidently erroneous. The testimony taken in the cause, shews the necessity of the road to the neighborhood, through which it runs: the impossibility of reaching the turnpike from a particular settlement, near the new road ; and that this latter was the only direct route of that settlement, to their market, and the county seat. Again, the complainant did not comply with his charter : and even if he had, that charter cannot receive an exclusive construction. The charter allows an approach to the turnpike within two miles, and it is denied that any part of this road enjoined, reaches to within that distance. In cases where there cannot be fixed upon a community, a palpable design of injuring the proprietor of a turnpike, the Courts will not restrain the erection of neighborhood roads. Is it correct, is it legal, that a large neighborhood should be restricted to a turnpike, merely because it is possessed of a charter : that the people composing such neighhood, should be forced to travel out of their way, over a mountainous country, to pay toll to a favored individual? Even if the defendant in error had been injured, and the road was obviously demanded by the wants of the country, the chancellor should

not have given him relief. Even the common principle has been departed from: the defendants are even prohibited from using the road *themselves*—this is contrary to the spirit of our institutions. It does not lie in the discretion of the defendant in error, to prescribe limits on each side of the turnpike — Claiming a statutory privilege, he must pursue the requisitions of his charter, strictly—2 Stewart 211. There the owners of a bridge which was enjoined, were permitted to use it themselves—though it was built near a ferry, with the avowed object of impairing the profits of the ferry owner. How different the case here. The defendants are not only enjoined from using the road, but enjoined to watch it for a distance of many miles. Suppose they were to attempt to force a traveller to leave the road, would the decree protect them?

The decree is uncertain and indefinite: it does not sufficiently designate, on whom it is to operate. If intended to reach all the defendants, it is contrary to the evidence in the cause—2 Stewart 291—10 Wheat 167.

*Shortridge*, contra.—The documents in this case show, that the franchise of the defendant in error was complete—and the question is not, how near to the turnpike is the road complained of; but what injury has resulted to the proprietor. He is a contractor with the State: and for the contract, he has given a valuable consideration. The State, then, is bound to protect its contract—to prevent its citizens from doing individually, what they cannot do as a body, without impairing the rights of the charter. As to

4 s & p. 33

the pretence set up, of the necessity of the road, as a route to the county seat, and to market—this is the least injury : that which we most complain of, and which was proved, was the interference with travellers—turning them from the turnpike, and inducing them to travel upon the other road.

The decree is not indefinite : it reaches all, but all are in interest. They do not deny having opened the road, and insist on keeping it open. Indeed they are all interested in avoiding toll. They need not watch the road, as is said, but they must close it : the decree requires no more—1 Hayw. 457 ; 1 Johns. C. R. 611 ; 5 Johns. C. R. 101 ; 2 Stewart 211.

Argued also by *Hopkins,* for defendant in error.

TAYLOR, J.—The bill in this case was filed to prevent the use of a road which the complainant alleged, had been opened so near to his turnpike road, as greatly to impair his profits, and for the purpose of doing so; without such road being of any material benefit to the community.

The defendants in their answer, deny that the road, which is complained of, was opened with the intention of lessening the profits of the complainant, and allege, that it is of great importance to those who live upon or near it; that it runs at the distance of from three to eight miles from the turnpike road of the complainant, and affords a nearer and better route to the court house of Marion county, in one direction, and to Florence, their market town, in the other, than the turnpike; that the country between the two roads is generally mountainous, and that there are only one or two points from which it would

be practicable to make a road from the principal settlements on and near the road complained of, into the turnpike road. All the material allegations of the answers are sustained by the proof.

In determining upon the propriety of granting relief in a case of this kind, many circumstances have to be taken into consideration. If the new road had been opened with the view and clearly for the purpose of impairing the profits of the turnpike road, and thus injuring the franchise of the complainant, this would amount to a fraud upon the complainant's rights, and, in the general, be a sufficient ground for affording him relief. But the decision would not turn upon this ground alone, for in many cases although the intention was simply to benefit the defendants and others; yet if the injury to complainant was great, without producing a correspondent public advantage, the new road would be considered a nuisance, and ordered to be closed. Such was the case of the road leading to the newly erected bridge, in the case of the *Newburgh Turnpike Company* vs. *Miller*,[a] and of the road around the turnpike gate, in the case of the *Croton Turnpike Company* vs. *Ryder*,[b] though in the latter case the road was evidently kept open with the intention of lessening the profits of the company. In the case of *Gates* vs. *McDaniel, et al.*,[c] this Court determined that the franchise of an individual in a public ferry, would be protected from injury by others. In that case, a bridge was erected by the defendants, very near the ferry of the complainant, and to the destruction of his interests; and the use of the bridge, except by the families of the defendants, was perpetually injoined.

[a] 5 Johns. C. R. 101.

[b] 1 Johns. C. R. 611.

[c] 2 Stewart 211.

We have now to inquire whether the relief sought in this case is within the reason given for affording it in the cases which have been cited.

It is contended by the counsel for the complainant, that the opening of any road, tending to impair his profits materially, no matter how important such road may be to the community, is a violation of his rights under his charter ; and that such road would be suppressed as a nuisance. But we can not assent to this doctrine. Our State is new—many parts of it scarcely settled at all; and we can not close our eyes to the well known fact, that such was the case in the part of the country through which the turnpike road of the plaintiff, and the road complained of now, run, at the time the former was chartered.

While a country is in this situation, there is use for but few roads; and even were more desirable, the population is not sufficient to open and keep them in repair. But our population is rapidly increasing; and neighborhoods, from affording two or three families only, often, in the course of four or or five years, are densely populated—possessing ample ability to open and keep in order the roads necessary for their convenience. Therefore, when authority to establish a turnpike road, is given by onr general assemby, to any man, or company of men, it must be supposed to be done, with a view to this changing state of things ; and that the grantees shall have no right to restrict the number of roads around them, to what it was when the charter was enacted, or their road prepared for use.

Under this view of the subject, the only questions are, was it important to the interests of the inhabi-

tants, in the new and growing settlements on the road complained of, that it should be opened? and would it be burdensome and oppressive upon them, to require them to abandon the use of that road, and confine themselves to the turnpike? We think both questions must be answered in the affirmative; and therefore, that the complainant is not entitled to relief.

That the complainant will be protected in the enjoyment of every right which the charter was intended to bestow upon him, is certain. Therefore he cannot be deprived, in any way, of the profits arising from his road, while he fulfils his part of the contract; nor will any man or set of men be permitted to open a road, calculated to diminish those profits, unless such road would be of public advantage, and not conflict with the intention of the legislature, in chartering the road of the complainant. But while the complainant would be secured in his profits, and no road would be permitted to be opened, calculated to deprive him of them, even though of some public convenience; yet, when the interest of a portion of the community is to be greatly advanced, by making a new road, when it is oppressive to them, from great comparative increase of distance, the badness of the way to it, &c., to confine them to the use of the turnpike road, these important public benefits can not be sacrificed, because they incidentally affect the interests of the complainant: nor can we suppose that the general assembly, when enacting, nor the complainant, when receiving the charter, believed more extensive privileges to be secured by it, than are here recognised.

The decree must be reversed, the injunction dissolved, and the bill dismissed.

LIPSCOMB, C. J., not sitting.