# The American Union Telegraph Company *v.* The Western Union Telegraph Company.

*Bill in Equity by Telegraph Company to Enjoin another Telegraph Company from impeding or obstructing the Construction of its Lines.*

1. *Foreign corporations, constitutional prohibition as to doing business in this State, not violative of the federal constitution.*—The provision of the constitution (art. XIV, § 4) that "no foreign corporation shall do any business in this State without having at least one known place of business and an authorized agent therein," is a legitimate exercise of the police power of the State, is not in conflict with any act of Congress, nor violative of any provision of the Federal Constitution.

2. *Same; when equity will not aid by injunction.*—A court of equity will not interfere by injunction at the suit of a foreign telegraph company to prevent a rival company from obstructing the erection of its poles and wires, when the

[American Union Telegraph Co. v. Western Union Telegraph Co.]

bill does not show that the complainant has any known place of business or any agent in this State, nor that it has acquired any property or rights of property here.

3.   *Same; State cannot prohibit telegraph company from doing business within its limits.*—The congress of the United States having exercised its power to regulate commerce between the States as to the construction of telegraph lines, no State can directly, or indirectly, by legislative prohibition or otherwise, exclude a foreign telegraph company from doing business within its limits.

4.   *Same; when State may regulate business of, within its limits.*—The constitutional power of congress to regulate commerce does not exclude the exercise of a concurrent power by the States, except so far as congress has actually exercised the power ; and no act of Congress is to be interpreted as invading the police powers of the State, unless the intent is clear and obvious.

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

This was a bill filed by the American Union Telegraph Company against the Western Union Telegraph Company. The bill avers, that the American Union Telegraph Company is a corporation created by the laws of the State of Louisiana and domiciled in the city of New Orleans ; that the purpose and object of said corporation was to erect, maintain and operate lines of telegraph in Louisiana and in the adjoining States ; that its purpose was to erect telegraph lines along the right of way of certain railroads, which are named and described, and which are within the State of Alabama ; that said company had accepted the provisions of the act of Congress approved July 24th, 1866, entitled " An act to aid in the construction of telegraph lines and to secure the use of the same for postal, military and other purposes " that the secretary of the company had notified the Postmaster General, who had accepted the resolution of said corporation to that effect, and had ordered it filed ; and that all said railroads were public highways and post-roads of the United States. The bill further avers, that the Western Union Telegraph Company claims the exclusive right to run their lines along the right of way of said railroads, and that they threaten to impede and obstruct the complainant in erecting and operating their lines thereon.

The bill fails to show that complainant had obtained any property in this State, or that it had any place of business or any authorized agent therein.   It also fails to show that complainant had obtained any right of way, or constructed or attempted to construct any line of telegraph therein.   An injuction was prayed for, and a temporary injunction to restrain the Western Union Telegraph Company from interfering with complainants in setting up and operating lines of telegraph was granted.   The defendant answered, moved to dismiss the bill for want of equity, and to dissolve the injunction.   It also demurred to the bill, assigning, among other

grounds not necessary to be noticed, the following, viz : 1. The bill fails to show that complainant had secured any right at law or in equity which defendant had injured or molested, or had attempted to injure or molest. 2. Because the bill fails to show that complainant has any known place of business or any authorized agent in this State.

The chancellor dissolved the injunction and dismissed the bill, and the American Union Telegraph Company appealed to this court, assigning the said decree as error.

H. PILLANS, for appellant.—The bill shows that the American Union Telegraph Company was organized to construct and operate lines of telegraph in this, and other States, and that it has accepted the provisions of the act of Congress of July 24th, 1866, relating to the construction of telegraph lines. Rev. Stat. U. S. § 3964. Railroads are public highways and post-roads.—Const. Ala. Art. XIV, 21 ; Olcott v. Supervisors, 16 Wall. 697. Appellant had a clear right to construct and operate their lines on said railroads.—Rev. Stat. U. S § 5263 ; Const. Ala. Art. VI, § 11 ; Art. XIV, § 21 ; Code of 1876, §§ 1930-1932. Having the highest sanction of State and Federal authority, they might build on said roads at will, after obtaining the consent of the railroad companies or condemning the easement in their hands and paying for it. They have only to obtain the consent of the railroad companies, and it is against them alone that they take proceedings to condemn the easement.—Code of 1876, §§ 1930-1932. This clear right the defendant threatened to impede and obstruct. No railroad company can limit the State's exercise of its power of eminent domain, nor can it, being a post-road, exclude a telegraph company from its right of way.—N. O. & M. R. R. v. So. & At. Tel. Co., 53 Ala. 211 ; Pensacola Tel. Co. v. Western U. Tel. Co. 6 Otto, 1 ; 8 Green's Brice's Ultra Vires, 5, 6 ; Thomas v. R. R. 101 U. S. 71 ; 36 Ala. 317 ; 31 Ala. 82. It is of no consequence to appellees how the appellant acquired the right of way.—Code 1876, § 1930 et seq.; 53 Ala. 211. This bill is in the nature of a bill quia timet ; it is to restrain the commission of a threatened nuisance of an injurious character to the public. It shows a clear right in complainant, and irreparable injury and vexatious suits impending. Equity will grant an injunction in limine in such cases.—High on Inj. 572 ; 2 Story Eq. 826, 922, 923 ; Wheeling and Belmont Bridge Case, 18 How. 508 ; Burden v. Stein, 27 Ala. 104 ; Lide v. Hadley, 36 Ala. 627 ; Wright v. Moore, 38 Ala. 593 ; Mayor v. Rogers, 10 Ala. 37 ; Croton Turn. Co. v. Ryder, 1 J. Ch. 615. If the threatened injury is a trespass, equity may interfere. High Inj. 21 ; U. S. v. Duluth, 1 Dillon C. C.; 5th Ohio, 139;

6 J. Ch. 497; 27 Ala. 104; 36 Ala. 627. The right need not be first established at law, and a legislative grant is equivolent to establishing the right at law.—1 J. Ch. 611; 31 Me. 362; 2 Dan. Ch. Pl. 1623 (note). Complainant, although a foreign corporation without officers established in this State, may have this remedy.—*Mayor of Columbus v. Rodgers,* 10 Ala. 37, 49. It is not yet doing business here, nor seeking to enforce any rights growing out of its exercise, and they have the Congressional and State license to pass through the State. This franchise is in its possession, and it will be protected.—*Boston R. R. v. Salem R. R.,* 2 Gray, 27; *Gates v. McDaniel,* 2 Stew. 211; 7 Conn. 50, 51. Complainants' rights were vested by their acceptance of the benefits and burdens of the act of congress of July 24, 1866.

GAYLORD B. CLARK, and FRANK B. CLARK, JR., for appellee. The bill was properly dismissed. The appellant is a foreign corporation, and must show, before it can acquire any right, that it has at least one known place of business and an authorized agent or agents in this State—Const. of Ala. Art. XIV, § 4; and it must show that it has acquired the right to construct its lines on the particular railroads mentioned in the bill, either by contract with their owners or by proceedings *in invitum,* and payment of just compensation for the property taken or destroyed.—Const. of Ala. Art. XIV, § 4; Art. 1, § 24; Code of 1876, §§ 1930-1-2. These sections only give to foreign corporations a mere license to do business in this State, but they do not vest in them *ex vi termini,* or by legal construction, any legal right to carry on such business over any particular railroad or any particular property; and they imply that the railroad companies have such a property in the right of way as to furnish a valuable consideration for a contract granting it to another. Before the right to take any particular property can be vested, the proceedings must be had and an award made pursuant to sections 3580 to 3600 of the Code. There is no pretense in the bill that these prerequisites to the establishment of the right claimed have been complied with, and no suggestion that they will ever be complied with. If the appellant had, at the time this bill was filed, attempted to do what it says the Western Union Telegraph Company obstructed it in doing, it would itself have been a trespassser.—*B. O. & M. R. R. v. Smith,* 49 Me. 9; *M. & C. R. R. v. Payne,* 37 Miss. 300; *Henry v. R. R.,* 10 Iowa, 540; *Powers v. Beers,* 12 Wis. 212; *Commissioners v. Dunham,* 43 Ill. 86; *Graham v. R. R. Co.,* 27 Ind. 260; *Washburn v. Miller,* 117 Mass. 376; Mills on Eminent Domain, 90; 128, 130. An interlocutory injunction is only proper to

preserve the *statu quo* until conflicting rights can be settled ; nor does it matter that the contemplated work is a public improvement—High on Inj. 47 ; *Spenrice v. Wallace*, 37 Miss. 172. Appellant not being in the possession and enjoyment of any rights which the defendants are attempting to infringe, the court will not decree an injunction.—*Enfield Bridge Co. v. Conn. River Co.*, 7 Conn. 30 ; *Youngblood v. Youngblood*, 54 Ala. 486 ; *Boulo v. N. O. M. & T. R. R.*, 55 Ala. 480 ; 3 Waite's Actions and Defences 685 ; Brickell's Digest, 673, 472, 473. A bill not disclosing a case for equity is fatally defective, and it may be taken advantage of at any stage of the proceedings —*Teague v. Wade*, 59 Ala. 369.

SOMERVILLE, J.—The bill in this case was filed by the appellant against the appellee, claiming to be organized as a body corporate under the laws of Louisiana, and showing itself entitled, as a telegraph company, to the benefits of the act of Congress of July 24, 1866, relating to the construction of telegraph lines, over the public domain, across navigable streams, and along " any of the military or post-roads of the United States."

The complainant does not allege the possession or owner-ship of any property whatever, in the State of Alabama, except its corporate franchise, nor does it claim to have acquired by contract, condemnation or otherwise, any right of way for the construction of its lines within the territorial jurisdiction of this court. It is, however, averred, that the appellee (the defendant in the bill) threatens to harrass, im-pede and obstruct complainant, so as to delay or prevent the construction of such work or enterprise, which it has a right to prosecute under the license authorized by the said act of congress. It is claimed that these threats, if executed, will produce irreparable damage and the bill prays an injunction to restrain the execution of them. The case was submitted on demurrer and motion to dismiss for want of equity, and the chancellor sustained the demurrer, dismissed the bill and dissolved the temporary injunction.

Section 4, art. 14 of the Constitution of 1875 provides that " no foreign corporation shall do any business in this State without having at least *one known place of business* and *an au-thorized agent* or agents therein, and such corporation may be sued in any county where it does business by service of pro-cess upon an agent anywhere in this State."

This clause of the Constitution is prohibitory and needs no legislation to carry the mere prohibition into effect, or to give it force. The bill, filed by the appellant corporation, fails to aver that it has any place of business or an author-

ized agent in the State of Alabama. It has, therefore, presumptively no lawful right to do any business in the State by reason of this Constitutional prohibition, provided the clause in question is not violative of the Constitution of the United States, or of any law enacted by Congress pursuant thereto.

To this question we propose to direct our inquiry. Congress has power to regulate commerce with foreign nations and among the several States."—Const. U. S. Art. 1 § 8 par 3. The act of Congress, approved July 24, 1866 (14 Stat. 221; Rev. Stat. sec. 5263 *et seq.*) under which appellant claims its license, confers simply "the right to construct, maintain and operate lines of telegraph" along military or post-roads of United States, over the public domain or across navigable streams, and this law has been held by the Supreme Court of the United States to be a valid exercise of the power to regulate commerce between the States.—*Pensacola Tel. Co. v. West. Union Tel. Co.* 96 U. S. (6 Otto,) 1.

The same court had previously held, in *Paul v. Virginia*, 8 Wall. 168, that a State might exclude a foreign insurance company from its jurisdiction, and that such companies, when mere corporations find no protection in that clause of the Federal Constitution, which declares that the "citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States."—(Art. 4, § 2.) That was not, however, the case of a corporation engaged in inter-State commerce, such as a telegraph or railroad company, and as to these the rule is decided to be different.—(6 Otto, 1.) Admitting the soundness of this conclusion, we may concede its logical sequel, as enunciated in the case of *Pensa. Tel. Co. v. West. U. Tel. Co*, *supra*, that no State can exclude such foreign corporations from doing business within its limits, directly or indirectly, by legislative prohibitions, or otherwise.

The power to regulate commerce is manifestly a dormant power until brought into activity. It covers a wide field and embraces many subjects, and to the extent that congress fails to exercise it in any given case, it seems to be conceded that it is a concurrent power and may be exercised by any State. As said, by Justice Swayne, speaking for the Supreme Court of the United States, in *Gilman v. Philadelphia*, 3 Wall. 713, (725). "Until this dormant power of the Constitution is awakened and made effective by appropriate legislation, the reserved power of the States is plenary, and its exercise in good faith cannot be made the subject of review by this court."

This concurrent exercise of such a power by the Federal and State Governments is illustrated in the case of *Steamship*

*Co. v. Joliffe*, 2 Wall. 450. There Congress had provided by law a system under which the master and owner of vessels, propelled by steam, were required to employ competent pilots to navigate such vessels on their voyage. The legislature of California passed an act entitled "An act to establish pilots and pilot regulations for the port of San Francisco." Mr. Justice Field, delivering the opinion of a majority of the court, says, speaking of the constitutional power under discussion. " But this clause does not, in terms, exclude the exercise of any authority by the States to regulate pilots, on the contrary, the authority of the States to regulate the whole subject, in the absence of legislation on the part of congress, has been recognized from the earliest period of the government." The two acts, the one passed by the general government and the other by the legislature of California, though both related to the same general subject matter, were declared consistent with each other and a valid exercise of legislative power. The California statute was clearly a police law or regulation, and was sustained, no doubt as such. In *Gilman v. Philadelphia, supra*, Mr. Justice Swayne recognized a familiar political axiom in American constitutional law, pertinent to this discussion, when he said : " The National government possesses no power but such as has been delegated to it. The States have all but such as they have surrendered."

In *Pensa. Tel. Co. v. West. Un. Tel. Co., supra*, WAITE, Ch. J., said : " State sovereignty, under the constitution is not interfered with. Only national privileges are granted." And again : "Upon principles of comity, the corporations of one State are permitted to do business in another unless it conflicts with the law, or unjustly interferes with the rights of the citizens of the State into which they come."

In the License Tax Cases, 5 Wall. 469, it was declared by CHASE, C. J. in behalf of the court, that a license to sell spirituous liquors, obtained from the General government, conferred no authority on the license to violate any police law or regulation of a State, in whose domain he might seek to exercise the right.

The police power of a State is a most important power, essential to its very existence, and has been declared by the supreme judicial interpreter of the Federal Constitution to embrace " the protection of the lives, health and property of her citizens, the maintainance of good order, and the preservation of the public morals ; and the legislature," it is added, " cannot by any contract divest itself of the power to provide for these objects."—*Beer Co. v. Massachusetts*, 97 U. S. (7 Otto), 25.

Without this valuable power, that protection of life, liberty and property, for which all government is established, could not be secured to the citizens of any commonwealth. No law of the general government is, therefore, to be interpreted as invading this power unless such intent is clear and obvious. The mandate of Sec. 4, of Art. 14, of the Constitution of Alabama, which requires foreign corporations to have a known place of business and an authorized agent, is just as much a police regulation for the protection of the property interests of its citizens as a law forbidding vagrancy among its inhabitants. It does not impede or obstruct unreasonably any right conferred on foreign telegraph corporate companies by the act of Congress of July 24, 1866, and is therefore free from constitutional objection. Nor do we design to intimate that any State law having such an effect would be constitutional.

The appellant corporation, in its bill, does not show that it is the possessor or owner of any property in the State of Alabama, nor in fact of any property, save its corporate franchises, acquired from a foreign jurisdiction. It neither claims to have purchased or condemned any right of way under its license. It does not claim to have constructed or attempted to construct any portion of its contemplated line of telegraph, or to have procured the material therefor. We do not think the protective and preventive jurisdiction of a court of equity, by the extraordinary process of injunction, can or should be invoked upon such a remote and speculative apprehension of injury. A complainant might, with as much reason, seek to enjoin waste upon a well-timbered tract of land for which he was negotiating, and a deed to which he expected to obtain the following day or ensuing week; or to ask protection by injunction against interference with a ferry franchise before he was the possessor or owner of the banks of the stream over which he proposed to run it.

The history of equity jurisprudence, we apprehend, fails to furnish a case of this character where there has ever been an interposition by injunction under the pretext of preventing irremediable damage, or on any other ground of chancery jurisdiction.—*Gates v. McDaniel*, 2 Stew. 211; *Osborn v. Bank of U. S.*, 9 Wheat. 738; *Baird v. Shore Line*, 2 Blatch. 276; High on Inj. §§ 7, 8, 10; 3 Waite's Act. and Def. p. 685, § 9.

There is no error in the decree of the Chancellor, and it is affirmed.