## HARRELL & CROFT vs. ELLSWORTH ET ALS.

1. The grant of a license by the commissioners' court to establish a toll bridge is a privilege, in its nature strongly resembling a franchise granted by the State, and in general must be governed by the same principles.

2. Where the commissioners' court grants to a party a license to establish a toll bridge, on a condition to be performed, and he is in possession of the privilege, his right to its enjoyment cannot be called in question by an individual, on the ground of his failure to perform the condition. Such a power belongs exclusively to the commissioners' court.

3. The 5th section of the act of 1839, which provides that no licensed toll bridge or ferry shall be established on the same water-course, within two miles, by water, of any toll bridge or ferry already established, was intended to limit the power of the commissioners' court, and not to enlarge the privilege of wrong-doers.

4. Under the proviso to the 1st section of the act of 1839, relative to the establishment of toll bridges &c., any person may establish a private bridge, but it must be limited to his own use.

5. A court of equity will grant a perpetual injunction to restrain the owner of a private bridge from permitting travellers &c., subject to the payment of toll at an established bridge, to pass over his bridge, in violation of the rights of the proprietor of the established bridge, and decree to the latter a pecuniary recompense for the losses thereby sustained.

Error to the Chancery Court of Chambers. Tried before the Hon. Wilie W. Mason.

BAUGH, for the plaintiffs:

An injunction will be granted to secure to a party the enjoyment of a privilege confered by statute, of which he is in the actual possession, and where his legal title is not put in doubt. Croton Turnpike Co. v. Ryder, 1 Johns. Ch. 611.

Where one has a grant of a ferry, bridge, or road, with the exclusive right of taking toll, the erection of another ferry, bridge or road so near it as to create a competition injurious to such franchise, is a nuisance, and this court will grant a perpetual injunction to secure the enjoyment of the statute franchise, and to prevent the use of the rival establishment.—Newburgh Turnpike Co. v. Miller et al., 5 Johns. Ch. 100.

It is competent for a court of chancery to protect the rights of persons having a franchise, by injunction.—Mayor and Al-

dermen of Columbus v. Rodgers et al., 10 Ala. Rep. 38; 5 Johns. Ch. Rep. 111.

The owner of a ferry established by the Legislature is protected in his right by the common law.—Stark v. McGowen, 1 N. & McC. 387. A party having a ferry established by law can restrain the use of a free bridge, whereby the profits of the ferry are lost.—Gates v. McDaniel & Spurlin, 2 Stew. 211.

All exclusive grants or franchises ought to be so construed as to give them due effect, by excluding all contiguous competition, which would be injurious and operate fraudulently upon the grant.—3 Kent's Com. 459. The common law declared all such invasions of franchises to be nuisances.—Ib.

2. The court in considering the extent of powers, look to the *end* and *design* of the parties and to the *substantial* rather than the *literal* execution of them.—Nelson et al. v. Troup et al. 7 Johns. Ch. 25. Contracts are to be expounded so as to carry into effect the intention of the parties.—Watts, ex'r, v. Sheppard, 2 Ala. Rep. 434; Scott v. Baber, 13 ib. 187.

The terms of this grant to defendants to establish the new by-road are for a *public* road; the defendants cannot use it for themselves *only;* for the condition of the grant would fail, and the title revert back to the grantors.—Newburgh Turnpike Co. v. Miller, 5 Johns. Ch. 114.

By reference to the license granted to plaintiffs and the bond executed by them to the Judge of the County Court, it is manifest that the contract authorised the complainants to use the old bridge. The court had authority to do so.—See Clay's Dig. 513, § 25. The court had the authority to grant the license.—Clay's Dig. 513, § 26. The testimony shows that the time had expired for which the public bridge was to be kept up by the builders, &c.

BELSER & HARRIS, for the defendants:

1. The license issued to complainants is a contract between the county and complainants, by which the right to collect toll is granted on the condition that the complainants build a bridge. Thompson v. The People, 23 Wend. 554, 238; 3 Kent's Com. 458.

2. Complainants, before they can complain of an invasion of their license, must show that they have complied with the con-

ditions upon which their right to collect toll was to accrue.—
Lombard v. Cheever, 3 Gilm. 469 ; The People v. Thompson,
21 Wend. 251; The People v. Utica Ins. Co., 15 Johns. 358;
Angel & Ames on Corp. 466; Attorney Gen'l v. Petersburg &
Roanoke R. R., 6 Ired. 456; Pres't & Directors &c. v. Ryder
et al., 1 Johns. Ch. 611.

3. Defendants have a right to build a bridge over two miles
by water from the bridge claimed by complainants.—Clay's Dig.
514, § 24.

4. Defendants have the right to build a private bridge at any
place on their own land, for their own crossing.—Clay's Dig.
513, § 26.

5. The answers and evidence show that the bridge built by
defendants is on their own land, and is a private bridge kept for
their own use.

PARSONS, J.—The plaintiffs in error were the complain-
ants below. They state in their bill that the commissioners'
court of roads and revenue in Chambers county, on the 4th day
of December 1848, granted to them a license to establish a toll
bridge across Osenappa creek, in that county, where one of the
public roads crosses it, and to erect a toll-gate for their benefit
for the term of five years from that time, and to charge the rates
of toll which were prescribed by the commissioners' court.
They exhibited with their bill a transcript from the records of
the commissioners' court, showing the grant of the license, the
rates of toll, and the bond given by the complainants according
to the statute. They state further that they accordingly, at great
labor and expense, established the bridge and toll-gate and be-
came fully possessed and in the exercise of their privilege, and
that their bridge was the crossing place of the mail stage, of
many travellers &c. subject to the payment of toll ; also that
defendant Ellsworth was the proprietor of a line of mail stages,
and that the defendant Doolittle was his agent ; that they and
the other defendants, combining &c. with the assistance of other
persons, had cut out and opened a by-road near the toll bridge
of the complainants, and built thereon a new bridge across the
same creek, about a mile from the bridge of the complainants,
and that the by-road at each end intersects the public road and
avoids the bridge of the complainants. The bill states that

Ellsworth had turned his stages &c. upon the by-road, and that many travellers &c. had gone upon it, avoiding the toll bridge.

Ellsworth, by his answer, controverts the right of the complainants to the toll-gate, alleging that instead of erecting a new bridge, according to their contract with the commissioners' court, they had made some inconsiderable repairs upon and appropriated a bridge at the same place, which had been erected by authority of the said commissioners' court. He states further that the new bridge was more than two miles by water from the bridge of complainants, but within that distance by land. He insists that he had a right to erect the new bridge for his own use as stage contractor &c., and admits that he had used it accordingly. It appears by the answer that travellers had been permitted to cross at the new bridge, and so it appears that by means of the new road and bridge the complainants have lost the profits of the stages and travellers. It is also evident from the answer that Ellsworth, unless restrained, will continue to disturb the complainants in the enjoyment of their privilege. Without noticing the other defendants at this moment, we will examine the question between the complainants and Ellsworth. And in the first place, it is clearly a proper case for an injunction, according to the facts stated in the bill.—Gates v. McDaniel & Spurlin, 2 Stew. 211. But the answer, sustained too by the evidence, presents several matters of defence, beyond what appears by the bill, and we will consider them in their order.

It appears that the complainants, at small expense, repaired the existing bridge, and, having erected their toll-gate, became thus fully possessed of the privilege and in the enjoyment of its profits. It appears that this bridge was in the proper place, or very nearly so, and that it was safe and sufficient. The counsel of the complainants contends that they acquired a right to the existing bridge by virtue of their contract with the commissioners' court, and we think the transcript from the record of the commissioners' court in some degree favors this argument, for it appears that the privilege was to commence from the day of the order granting the license, which was before a new bridge could have been built. This and perhaps some other parts of the proceedings, which appear by the transcript, tend, in some degree, to support the conclusion that the parties intended that

the complainants should have the existing bridge, or the use of it. But this, we think, is repelled by several parts of the transcript, from which, we are inclined to think, it must be infered that a new bridge was contracted for and expected. It might, perhaps, be infered from the nature of the case that the commissioners' *court intended to abandon and did abandon the existing bridge,* and that the complainants therefore had a right to appropriate it. But if the abandonment and the right to appropriate it were both clear, they do not establish the fact of *strict* performance of the undertaking of the complainants, which was, as we think, to build a new bridge. There is no question but that a party to whom a franchise has been granted, upon conditions to be performed by him, must perform them substantially, or he will forfeit the franchise ; and in a proper proceeding for that purpose, the forfeiture will be declared and he will be ousted of the privilege.—Thompson & others v. The People, 23 Wend. 537; The People v. Thompson & others, 21 Wend. 235. According to the opinion of the court in the case cited, as it is reported in 23d Wend. 537, a substantial performance of the conditions upon which such grant is made is all that can be required where the condition is subsequent. It appears by that case, that if the party vary in his performance from the conditions in an immaterial matter, and if no private or public injury resulted from the variation, it was all that could be required. Taking it as true that a substantial performance of conditions subsequent in such cases is all that can be claimed, and that the performance is substantial if it answer the purpose as well, and if no injury can result from it, and it varies only in what is immaterial, yet it is obvious that many questions of this kind may be extremely perplexing, and it may be difficult to bring them within any general rule. But it is certain in England, in respect of franchises granted by the King, that he may waive these questions and consider the performance as sufficient: And it is as clear in respect of franchises granted here by the Legislature, that the State may waive all such questions and accept of any performance. It is therefore a wise principle of law, that no individual can be permitted, more especially in a collateral proceeding, to claim or to establish a forfeiture in any such cases. This right belongs to the King alone in England, and here to the State alone, and this is to be accomplished only by a direct

proceeding for the express purpose, as by *scire facias*, *quo warranto*, or information in the nature of *quo warranto*. And it is very clear that the King in England or the State here may waive strict performance and accept of substantial or any performance, whether the condition be precedent or subsequent, and that after the party is in full possession of his privilege, the manner of his performance cannot be taken advantage of by individuals. Confining ourselves still to franchises granted by the State, and we may add, to questions arising in cases at law, it may be further remarked, that if an individual may take advantage of the manner of performance, or of any such thing, a singular result might be produced. He might, so far as he is concerned, oust the party of his franchise; but if the State should accept of the performance, or waive the forfeiture, then the franchise would be good against the State and all persons except the one who had annulled it, which is inconsistent with the nature of a franchise. In Angell & Ames on Corp. 507, it is said: "It cannot be shown in defence to a suit of a corporation, that the plaintiff's charter was obtained by fraud; nor especially by a subscriber who accepted the charter and assisted in putting it into operation. Neither can it be shown in defence that the plaintiffs have forfeited their corporate rights by misuser or non-user. Advantage can be taken of such forfeiture only on process in behalf of the State, instituted directly against the corporation, for the purpose of avoiding the charter or act of incorporation, and individuals cannot avail themselves of it in collateral suits, until it be judicially declared. And when a company was incorporated for the purpose of removing from a river all obstructions to the free passage of logs, &c. and were authorised to demand tolls of the owners of logs, &c. freely passing down the river, in an action to recover tolls for logs that passed the river freely, it was held, that the defendant could not show that the corporation had not removed the obstructions, even though the act of incorporation was to be void, if they should not be removed within a year, and more than a year had elapsed before the action was brought." With this Chancellor Kent agrees. 2 Kent's Comm. 312. In the case of The Bank of Galliopolis v. Trimble, 6 B. Monroe, 599, the court held, that the defendant could not go into the question of forfeiture of the plaintiff's charter by non-user or misuser, or for a failure to comply

with the requisitions thereof in any respect, and held that the question of forfeiture could only be determined by a direct judicial proceeding. In Adams v. Beach & Stuart, 6 Hill's R. (N. York,) 271, it was held, than in an action by one claiming the right to take toll under an act of the Legislature, the defendant may show that the franchise has been repealed or surrendered, or that it has expired by its own limitation, but not that the plaintiff has forfeited it. In Townsend v. Blewett, 5 How. (Miss.) R. 503, which was an action to recover damages for disturbance of a bridge franchise, it was held to be sufficient that the franchise was granted and the plaintiff was in possession, although it was not granted to him, but to another person of whom he had purchased the land, but it was not certain that the franchise had passed. In Peter v. Kendal et al. 6 B. & C. the action was case for disturbance of a ferry, and it was held to be sufficient for the plaintiff to prove that he was in possession of the ferry when the cause of action arose, and that neglect of duty by the owner of the ferry was no answer to the action, although the Crown might on that ground repeal the grant by *scire facias* or *quo warranto:* And see Duke v. The Cahawba Nav. Company, 16 Ala. 372. In speaking of forfeitures in such cases, Chancellor Kent says, "A court of chancery never deals with questions of forfeiture. It may hold trustees of a corporation accountable for abuse of trust, but the court cannot, without special statute authority, divest corporations of their corporate character and capacity."—2 Com. 313. He says that such subjects are exclusively of common law jurisdiction. And it is clear that the question of forfeiture of any franchise granted by the Legislature, whether to an individual or to a company, is exclusively of common law jurisdiction. What we have said as yet has been in relation chiefly to franchises granted by the King or by the Legislature, and the authorities cited in general applied to cases at law. The complainants in this case claim under a privilege granted by the commissioners' court according to the statute, and the present is a case in equity. It is, however, a privilege in its nature strongly resembling a franchise granted by the State, that is to say, by the Legislature itself, and we think they must in general stand upon the same principles: For although this privilege was not granted by the State directly, yet it was granted by competent public authority,

acting in conformity with an express act of the Legislature. It comes mediately from the Legislature itself. There may be one difference—it may be uncertain by what process the complainants may be ousted from their privilege, if a proper cause should exist. But the remedy given by the statute is perhaps in all cases sufficient. The person to whom the privilege is granted is to give bond with good security, payable to the Judge of the County Court and his successors in office, and conditioned that the bridge shall be well built according to the grade of the road and kept in good repair, so that it may be passed at all times with safety and convenience; which bond the court may require the party to renew at any time on giving him ten days' notice, and if he fail to do so, the court may revoke his license, &c.—Clay's Digest, 513, § 26. This would be equivalent to a judgment of ouster at the common law. The complainants, as has been said, were in the actual possession of a bridge, in the proper place, or so nearly so that an individual cannot object on that ground, which was sufficient for the purpose, at least for the present, and in the full enjoyment of their privilege, which had never been revoked or in any way annulled. We therefore think that the defendants cannot question the right of the complainants to their privilege on the ground upon which they have attempted to do so. Such a right belongs exclusively to the commissioners' court, and it may waive it whenever it may seem proper to do so. And we can see no reason for a difference in this respect, because the case is in equity. As, in the language of Chancellor Kent, "A court of equity never deals with questions of forfeiture," in such cases, the chancellor could not have declared one in the present case, and consequently the defendants could not make the question.

The defendant in the next place states that his bridge is more than two miles by water from the bridge of the complainants. The statute upon this subject, (Clay's Dig. 514, § 29,) is—That no licensed toll bridge or ferry shall be established on the same water course, within two miles by water of any toll bridge or ferry already established, with certain exceptions which are not material in this case. It was the intention of this statute, we think, to limit the power of the court in establishing toll bridges and ferries, and not to enlarge the privi-

lege of wrong-doers. This case therefore is not affected by that statute.

The defendant insists that his road and bridge were made for his own use, and that he has a right to use it as stage contractor and otherwise. This right is founded on the proviso of the act which regulates the licensing of toll bridges, ferries and causeways.—Clay's Dig. 613, §26. The proviso is in these words: "*Provided,* any person may keep a *private ferry &c.* at which no toll is charged." We think this was intended to include a bridge as well as a ferry, although a bridge is not expressly mentioned. But whether a bridge or a ferry, it must be a private one, that is to say, it must be limited to his own use. To this extent he may draw away the business and property of an established bridge, but no further. If he permit travellers &c. to pass by his road and bridge, that would otherwise cross the established bridge, it is a violation of the law and of the rights of the proprietor of the established bridge, and he is responsible for it, because no such thing was intended. He must use his private bridge so as not to injure others. The Legislature has not indicated an intention, however, to limit his own use of such private ferry or bridge, and we cannot do so. Hence we think he may use it for himself, his family, his stages or other property, his servants and agents, and in short, in every way in which a bridge is used. If he should permit others to use it under any false pretense, such as being in his service, he would be responsible for it. We therefore think that Ellsworth must be enjoined during the continuance of the license of complainants, from permitting travellers or any other person or thing which may be subject to the payment of toll at the bridge of the complainants, from passing upon his road or bridge, but saving to himself all his rights, as defined by this opinion.

With respect to the other defendants, we think that all who participated in producing or continuing the disturbance ought to be enjoined, as well as Ellsworth, during the continuance of the privilege of the complainants, according to the principles of this opinion, and with a saving of such individual rights as any of them may have of using the new bridge, in conformity with the principles of this opinion.

And we think the complainants are entitled to a pecuniary recompense for their losses occasioned by the disturbance of

their privilege, and that an account thereof should be taken, in conformity with the rights of the parties and the principles of this opinion.

The decree of the chancellor is reversed and the cause remanded, to be proceeded in, not inconsistently with the views above expressed.