# Ragland *v.* Cantrell.

### *Bill in Equity to enjoin Sale of Lands under Execution.*

1. *When equity will enjoin sale under execution on judgment at law.* — A sale ·of lands under execution, issued on a judgment which is fraudulent, will be enjoined in equity, at the instance of the purchaser at a former sale under sundry executions, one of which was issued on the same fraudulent judgment. The fraud in the judgment, and the attempt of the creditor to sell the land a second time under it, give the purchaser a twofold claim to equitable relief for the removal of the cloud on his title.

2. *Judgment by confession; agreement between judgment creditor and debtor, as to lands sold under execution.* — A judgment by confession, obtained partly by promises of leniency, and partly by threats of suing out an attachment, is not fraudulent and void as against other creditors; and where the debtor's lands are sold under execution issued on such confessed judgment, and are bought at the sale by the judgment creditor, an agreement between them, entered into before the sale, but reduced to writing after it, that the debtor shall cultivate the lands for the ensuing year, and assist in reselling them at an increased price, the net profits arising from the farming operations, or from a resale, to belong exclusively to the creditor, and to be applied by him towards the payment or reduction of other demands held by him against the debtor, on which suits were then pending; but that the creditor's title to the land, under his purchase at the sheriff's sale, should not be at all impaired or affected by the agreement, — is not fraudulent as against other creditors, and does not vitiate the sale.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 5th August, 1867, by John D. Ragland against John F. Cantrell, Anderson J. Pool, and John T. Shropshire; and sought to enjoin a sale of certain lands, under execution issued on a judgment in favor of said Cantrell against said A. J. Pool. Cantrell's judgment against Pool, which was for upwards of $47,000, was rendered by confession, at the Fall Term, 1865, of the Circuit Court of Perry. The complainant also obtained a judgment by confession against said Pool, at the Spring Term, 1866, of said Circuit

[Ragland v. Cantrell.]

Court, for more than $48,000 ; and he held other claims against said Pool, amounting to more than $45,000, on which suits were pending when the bill in this case was filed, and which were afterwards reduced to judgments. On the 17th September, 1861, three decrees were rendered against said Pool, as the administrator of D. S. McNeill, deceased, by the Probate Court of Dallas County, in favor of the distributees of said McNeill's estate, for about $7,500 each ; and executions on these decrees had been regularly kept up until 1866. Executions on these decrees, and also on the judgments in favor of Cantrell and Ragland, being in the sheriff's hands, were levied by him on certain lands in Perry County, as the property of said Pool ; and said lands were sold, under said levies, on the first Monday in October, 1866. At that sale, Ragland became the purchaser, at the price of about $16,000, and received the sheriff's deed for the lands. The purchase money was applied to the McNeill executions, which then belonged to said Ragland, and they were returned satisfied, and Ragland was allowed to retain the balance, about $3,000, on indemnifying the sheriff against Cantrell's execution. In his bill, Ragland asserted title to the lands under his purchase at this sale ; and he alleged that Cantrell's judgment was obtained by fraud and collusion, and that Pool in fact owed him nothing. Shropshire was joined as a defendant, on the ground that he claimed the ownership of Cantrell's judgment, or some interest in it.

A joint answer was filed by Cantrell and Shropshire, which was also adopted by the defendant Pool. They asserted the validity of Cantrell's judgment, and that its lien was superior to the McNeill executions, and attacked the validity of Ragland's judgment, and of his purchase at sheriff's sale, as fraudulent and void against other creditors of Pool. They also demurred to the bill, for want of equity, and because the complainant had an adequate remedy at law.

The deposition of the complainant was taken in his own behalf. In stating the circumstances connected with his purchase of the lands at the sheriff's sale, he admitted that there was a verbal agreement between him and Pool prior to the sale, which was reduced to writing after the sale, in these words : " This agreement, made and entered into this 1st day of October, 1866, by and between John D. Ragland of the one part, and Anderson J. Pool of the other, witnesseth : That whereas the said Ragland has this day bought at sheriff's sale, under execution against said Pool, two valuable plantations, leaving a large balance still due and owing to said Ragland ; and whereas said Pool is unable to pay said Ragland the balance due ; and whereas said Ragland does not desire to make to himself any profit by the resale of said lands, with-

[Ragland *v.* Cantrell.]

out crediting the same on his debts against Pool: Now, there-
fore, in consideration that the said Pool will take charge of the
plantation called the 'Scott place,' and will manage and con-
trol the same, for the exclusive benefit of said Ragland, and
will aid the said Ragland to sell said plantation, and will also
aid him in realizing a profit on the other plantation aforesaid,
the said Ragland hereby agrees that he will credit on his debts
and claims against said Pool all the net profits which he, the
said Ragland, may derive by or from the resale of said lands,
or raising crops thereon. And the said Pool, in consideration
thereof, agrees to take charge over said Scott plantation, and
all property which said Ragland may place on the same, and
diligently endeavor to enable said Ragland to procure a profit,
by disposing of that and allthe other lands bought by him as
aforesaid ; and that, in the mean time, said Pool will manage
and control said property to the best advantage of said Rag-
land, and, unless the same shall be sooner sold, raise a crop
thereon in the year 1867 for the benefit of said Ragland. Said
Pool is to reside on said plantations, and attend to said busi-
ness, not beyond or longer than the 1st day of January, 1868.
But it is expressly understood, that by reason of said purchase
said lands are *bonâ fide* and exclusively the property of said
Ragland, and that his title thereto is in no manner hereby af-
fected or impaired. October 2, 1866." (Signed by both par-
ties.)

On final hearing, on pleadings and proof, the chancellor held
that Cantrell's judgment was fraudulent ; but he nevertheless
refused relief, and dismissed the bill, on the ground that the
complainant's conduct in the premises did not entitle him to
ask the interposition of the court. On this branch of the case,
the chancellor's opinion was as follows : —

"Has the complainant, then, such a title as this court can
recognize and protect ? So far as his title depends upon a sale
made under the McNeill executions, it is absolutely void.
These executions were issued on judgments which the Supreme
Court say were, in effect, but the judgments of a foreign court.
*Noble & Brother* v. *Cullom & Co.* 44 Ala. 554. Being
such, the executions in the hands of the sheriff were no lien
upon the property, and gave him no authority to sell the same.
The deed executed by the sheriff, and the return on the Rag-
land execution, show that that execution was levied on the
property, and that the sale was made as well by virtue of it as
of the McNeill executions. That being the fact, and there
being an allegation in the bill to meet the fact in the proof,
the sale, as between Pool and Ragland, if not otherwise im-
peached, was good in law. The fact that the sheriff applied
the proceeds of sale in satisfaction of the void executions

[Ragland v. Cantrell.]

would not, in the absence of fraud, affect the title. In an appropriate proceeding, the debtor could have the proceeds properly applied. Nor could the sale be impeached, in this proceeding, on the ground of inadequacy of price. That objection cannot be raised collaterally. On timely application to the court from which the process issued, that court could set aside the sale for any gross and unconscionable inadequacy of price ; or, on a bill filed for that purpose, it might be decreed void on that account. Upon the surface, then, that sale was good, and sufficient in law to vest title in Ragland.

" But we are invited, in this connection, beneath the surface, and are to inquire into the intent of Ragland and Pool in making this sale. Confining ourselves, at this time, simply to the relations between Ragland and Pool, without regard to the effect of their transactions upon other creditors, we have clearly established by the proof the following prominent facts: Ragland, a creditor to a large amount, seeking security for his debt, and making promises and threats to induce Pool to place his property in his hands ; Pool, the debtor, confessing judgment, waiving the benefit of the stay-law, and surrendering his right to redeem ; a sale by the sheriff ; a purchase of all the real, and most of the personal property, by the creditor, at a low, if not an inadequate price ; no credit made upon the execution ; the debtor remaining in possession, to have the benefit of the crops to be raised by him, and the profit on a resale of the premises. What more was necessary to create in equity a mortgage between the parties ? An abstract title in Ragland, and a trust, coupled with an interest, in Pool ? The fact, that instead of making a deed they resorted to a sale under execution to divest the title from Pool, and vest it in Ragland, does not vary the effect of the transaction. *Forrest* v. *Camp*, 16 Ala. 642. In the case of *Byrne* v. *Marshall*, (44 Ala. 358), the Supreme Court say that after a deed absolute, a reservation in the grantor to continue in possession, and sell the property, was not a mere naked power of attorney, but a power coupled with an interest, and irrevocable ; and that, upon a sale by the grantor, his purchaser was, by operation of law, remitted to the grantor's original title. See also, in this connection, *Bryant* v. *Young*, 21 Ala. 264; *Brantley* v. *West*, 27 Ala. 542. While the power reserved in this case is not, perhaps, quite as broad as that reserved in *Byrne* v. *Marshall*, nor as extensive as that in *Brantley* v. *West*, yet it is the same in principle. There is reserved to Pool the benefit of the occupancy of the lands, and of the profits from the crops, and upon a resale ; and it is none the less a benefit to him, because it is to be applied in satisfaction of his debt to Ragland. The fact that the agreement was executed subse-

quent to the sale does not change its effect or its character. It was but the carrying out of a previous understanding and arrangement. The sale, then, by the sheriff to Ragland, and the deed executed in accordance therewith, did not, in equity, vest the absolute title in Ragland as against Pool.

" The material question, however, is as to the character of this transaction between Ragland and Pool, so far as the rights of other creditors are concerned. Did it have for its purpose the delaying, hindering, and defrauding of other creditors, or was it void as to them for any reason ? The intent of parties is seldom, if ever, expressed in their contracts ; it is to be inferred from the surrounding circumstances and the effect of the transaction. For a creditor to say that he was influenced by no fraudulent or improper motive, and that he only desired to obtain security for an honest debt, is never a sufficient answer to a charge of fraud. The law looks at the effect to discover the intent, and presumes that every man intends the natural and legitimate consequences of his acts. The intent will be presumed when the consequences naturally follow. If any arrangement between a creditor and his debtor is in effect a fraud upon other creditors, the law pronounces it fraudulent and void, whether the parties actually intended to defraud or not. *Wiley, Banks & Co.* v. *Knight,* 27 Ala. 336. In the light of all the authorities upon this subject, the mere statement of the facts in this case, as they appear from the testimony, forces the conclusion as to the character of the transaction, and its effect upon other creditors. We have, *first*, a debtor overwhelmingly insolvent, with judgments to a large amount already rendered against him, and an attachment from the Chancery Court issued ; *second*, a creditor to a large amount anxious to secure his debt, making through and to the debtor's friends liberal promises of advantage to the debtor, if he will place his property in his hands, charging him with fraud, threatening him with an attachment, and purchasing prior judgments and liens upon his property ; *third*, the debtor confessing judgment, and waiving the benefit of the stay-law, which would have prevented a sale of his property for over one year; *fourth*, a sale by the sheriff, and a purchase by the creditor, of all the real estate, and most of the personal estate, at a low figure, and no credit given on any debt; *fifth*, a sale of all the debtor's property, so far as this record shows, excepting property claimed as exempt, and two notes which he agrees to surrender, and for which no credit is given upon the debt ; *sixth*, a sale absolute on its face, with an unrecorded agreement between the parties, reserving the possession of the real estate to the debtor, and the benefit of any profit made from the crops, or upon a resale ; to the world, an absolute sale ; between the parties, a

[Ragland v. Cantrell.]

secret trust reserved to the grantor. What was the natural and legitimate effect of this, but to hinder, delay, mislead, and defraud creditors? The sale, then, made by the sheriff to Ragland, and the deed executed thereon, were in law, as against creditors, fraudulent and void. *Gregory* v. *Perkins*, 4 Dev. N. C. 50; *Holcomb* v. *Ray*, 1 Ired. 240; *Smith* v. *Sowder*, 6 N. H. 69; 8 N. H. 290. The case, then, is that of a complainant claiming title to property by virtue of a sale and deed which are, in law, fraudulent and void against creditors, praying relief and protection against a threatened invasion of his title, by a pretended creditor, having a judgment by confession, upon a simulated debt. Parties thus situated can have no standing in a court of equity, but must be remitted to a court of law, where they can have à jury pass upon their title."

The chancellor's decree is now assigned as error.

HARALSON & ROY and WATTS & TROY, for appellant. — 1. The equity of the bill is fully sustained by the following authorities: *Anderson* v. *Hooks*, 9 Ala. 704; *Lyon* v. *Hunt*, 11 Ala. 295; *Burt* v. *Cassety*, 12 Ala. 734; *Smith* v. *Pearson*, 24 Ala. 355; *Ala. Life & Trust Ins. Co.* v. *Pettway*, 24 Ala. 544; *Hunt & Frowner* v. *Acre & Johnson*, 28 Ala. 580; *Marston* v. *Rowe*, 39 Ala. 725; *Martin* v. *Hewitt*. 44 Ala. 418; *Mobile & Girard R. R. Co.* v. *Peebles*, 47 Ala. 317.

2. There can be no doubt that Cantrell's judgment was fraudulent. In this contest with Ragland, who was a prior creditor, the judgment itself amounts to nothing, and its consideration must be proved. *McCain* v. *Wood*, 4 Ala. 258; *Seaman* v. *White*, 8 Ala. 659; *Goodgame* v. *Cole*, 12 Ala. 82; *Dubose* v. *Young*, 14 Ala. 144; *Troy* v. *Smith & Shields*, 33 Ala. 470; *Ansley* v. *Carlos*, 9 Ala. 913; *Rowland* v. *Day*, 17 Ala. 681; *Snodgrass* v. *Branch Bank*, 25 Ala. 161. The parties themselves, who were most competent to prove the facts, are not examined as witnesses.

3. If Cantrell's judgment were valid, and the McNeill executions admitted to be void, his execution would have been entitled to the money arising from the sale, and he would have no right to sell the land again. *Wiswall* v. *Quinn*, 7 Ala. 645; *Campbell* v. *Spence*, 4 Ala. 543; *Bagby* v. *Reeves*, 20 Ala. 427; *Carraway* v. *McGehee*, at the January Term, 1872, in MSS.

4. Ragland's purchase at sheriff's sale cannot be collaterally impeached on account of any irregularity in the proceedings, or in the process under which the sale was made. It is only necessary for him to show a judgment, execution thereon, levy, and sheriff's deed. *Ware* v. *Bradford*, 2 Ala. 616; *Love* v. *Powell*, 5 Ala. 58; *Smith* v. *Houston*, 16 Ala. 111; *Pollard*

v. *Cocke*, 19 Ala. 188; *De Vendell* v. *Doe d. Hamilton*, 27 Ala. 157; *Carraway* v. *McGehee*, in MSS.

5. Cantrell's judgment being void, and there being no proof of any other creditor than Ragland, it is difficult to see how the transactions between Ragland and Pool, whatever their character might be, could be supposed to be prejudicial to the rights of others, or to bar Ragland's claim to relief in this case. But those transactions, it is submitted, when examined in connection with the evidence, were perfectly legitimate, and above suspicion of fraudulent intent. Ragland was a creditor to a very large amount, and, so far as the proof shows, the only creditor of Pool. He detected his debtor in the confession of a fraudulent judgment, for a large amount, in favor of Cantrell and charged him with the fraud; and then, partly by promises and partly by threats of suing out an attachment, for which he had just grounds, he obtained a confession of judgment in his own favor for a part of his demands. An honest creditor may use all zeal and industry, by lawful means, to secure his debt. *Dumas* v. *Young*, 39 Ala. 60. If the sheriff's sale could be collaterally impeached in this case, the evidence entirely fails to show any ground on which it can be assailed. The answers charged a fraudulent combination between Ragland and Pool to prevent competition at the sale, and that the lands did not bring their full value; but the charges are disproved. The lands were sold subject to Mrs. Pool's right of dower, and brought their full value. *Goodgame* v. *Cole*, 12 Ala. 82; *Dubose* v. *Young*, 14 Ala. 444. Even if they had been sold for a grossly inadequate price, the abuse of process might have been corrected by the courts from which the executions issued; and a court of chancery could not, even on an original bill, have taken cognizance of the matter. 9 Porter, 687; *Lee* v. *Davis*, 16 Ala. 516; *Henderson* v. *Sublett*, 21 Ala. 626; *Lankford* v. *Jackson*, 21 Ala. 651; *Kennedy* v. *Kennedy*, 2 Ala. 572; *English* v. *Lane*, 1 Porter, 328; *Bibb* v. *McKinley*, 9 Porter, 636. The arrangement between Ragland and Pool for the cultivation and probable resale of the lands was the best arrangement that could have been made for both of the parties; and as no one else had any interest whatever in it, there was no necessity for recording it. Notwithstanding the sale, Pool had the right to remain in possession until he was bought off, coaxed off, or sued off by the purchaser. *Coleman* v. *Hair*, 22 Ala. 596; *Long* v. *McDougald*, 23 Ala. 413. The agreement secured to Ragland the possession of the land without suit, a competent manager and superintendent for one year, and probable profits, to be applied to the reduction of his other debts; while the advantages to Pool, both immediate and contingent, are self-evident. The failure of the sheriff to indorse

[Ragland v. Cantrell.]

a credit on Ragland's execution was not a matter within Ragland's control; and he is not shown to have had any knowledge of it. The whole transaction between the parties was fair and honest, and could not possibly have injured any other person.

ELMORE & GUNTER, *contra.* — 1. The chancellor's opinion is an unanswerable argument on the merits of the complainant's case as disclosed by the evidence. Against such a claim to equitable relief, it was not necessary for the defendant to prove the consideration of his judgment, or to adduce any evidence in reference to it.

2. A close examination of the bill will show that the complainant bases his right to relief solely on his purchase under the McNeill executions. It is now settled in this State that such judgments will not support executions. *Ray* v. *Thompson*, 43 Ala. 434; *Martin* v. *Hewitt*, 44 Ala. 418; *Moseley* v. *Tuthill*, 45 Ala. 621. The complainant stands, then, as a general creditor only, and shows no right to enjoin a sale of his debtor's property. The allegations of the seventh paragraph of the bill, as to what the complainant " is advised and believes," cannot be regarded as statements of the facts themselves. *Jones* v. *Cowles*, 26 Ala. 612; *Read* v. *Walker*, 18 Ala. 332; *Charles* v. *Dubose*, 29 Ala. 371.

3. The prayer of the bill is not sufficient to authorize any relief. *Driver* v. *Fortner*, 5 Porter, 10; 1 Dan. Ch. Pr. (ed. 1871), 325.

B. F. SAFFOLD, J. — The purpose of the bill was to enjoin a sale of lands under execution. In October, 1866, the sheriff of Perry County, having in his hands executions issued upon judgments against A. J. Pool at various times, levied some of them on nearly or quite all of his property, real and personal, and sold the same for their satisfaction publicly, John D. Ragland becoming the purchaser. These judgments were rendered respectively in the Probate Court of Dallas County, in September, 1861, during the late war, in favor of distributees of the estate of D. S. McNeill, on the final settlement of Pool as his administrator; in the Circuit Court of Perry County, at the Fall Term, 1865, by confession, in favor of John F. Cantrell; and in the same court, at the Spring Term, 1866, also by confession, in favor of John D. Ragland. The proceeds of the sale were applied by the sheriff, first, to the satisfaction of the McNeill judgments, which had been previously bought by Ragland, and which were supposed to have priority; and, next, to the partial satisfaction of Ragland's judgment, in consequence of his indemnity against Cantrell's.

Afterwards, Cantrell caused another execution to be issued on his judgment, and levied on the same land; and he was proceeding to have it sold again, when he was restrained by the injunction obtained on this bill. In addition to these facts, Ragland, as complainant, charged that Cantrell's judgment was fraudulently obtained on a simulated debt, through collusion with Pool and John P. Shropshire. These defendants, answering without oath, which was waived, denied the charge, and alleged generally, though not by cross-bill, that Ragland's judgment was largely made up of usury and Confederate currency; and further, that he and Pool had corruptly conspired together to prevent a fair sale of the property at adequate prices. The bill was demurred to for want of equity, and because there was adequate remedy at law. It was heard on its merits, and the chancellor found that Cantrell's judgment was fraudulent, but that Ragland's conduct in respect to the sale was also reprehensible and fraudulent; and for this reason he did not deserve relief. He consequently dismissed the bill.

We find no fault with his decision respecting the character of Cantrell's judgment. It was by confession, which is indicative of agreement between the parties. The three persons best able to explain its consideration, the creditor, the debtor, and Shropshire, were not examined as witnesses, though interrogatories were filed to them. Several witnesses, conversant with Cantrell's pecuniary condition, testified that he was unable to lend so large a sum of money, and could not have had transactions of such magnitude with Pool without their knowledge, which must have been the case if the debt was genuine. The complainant's testimony exposes contradictory statements made by Cantrell and Pool, respecting the consideration of the debt and its ownership. Without detailing more of the evidence, we think Pool was not indebted to Cantrell. But, without reference to the fraud, Cantrell's execution was in the hands of the sheriff at the time of the sale, and was entitled to appropriate the proceeds, because the McNeill judgments could not, as held by this court, support executions, and Ragland's execution, though levied, was junior. R. C. § 2873; *Martin* v. *Hewett*, 44 Ala. 418. Supposing such appropriation made, because, if it may be, it must be for the protection of the purchaser, Cantrell cannot be allowed to sell the property levied on again. *Carraway* v. *McGee*, at the January Term, 1872. There can be no doubt about the equity of the bill. The purchaser has no means of forcing the vendee of the second sale to action, and for an indefinite time he would be subject to a suit at law, which would deter him from the proper improvement and enjoyment of his property, and effectually destroy

[Ragland *v.* Cantrell.]

his chances to sell or exchange it. *Mobile & G. R. R. Co.* v. *Peebles,* 47 Ala. 317.

2. What is there in Ragland's circumstances to affect his right to the relief he prays for? He has proved the good faith and substantial consideration of his large claims against Pool. He obtained a confession of judgment from him, by threatening to attach his property, and perhaps by wheedling and coaxing him with promises of leniency. Possibly, he may have put him in some fear, short of duress. But he could have attached his property, and that would have given him all the advantage he sought by the judgment, — a lien, and time to recover judgment. Having obtained the judgment, he may or may not have apprehended resistance and delay from Pool. He had a right to a levy and sale as soon as he could induce the sheriff to act. If he made arrangement with Pool, not calculated to hinder, delay, or defraud others interested in the property, there was no impropriety in his doing so. He did agree with Pool, in writing, after the sale, to let him superintend the cultivation of the lands for about one year, and to assist him in reselling them for a greater price. This agreement may have been assented to by them before the sale. But all of the profits, in either case, were to go to Ragland, in further credit on Pool's indebtedness to him. The contract expressly declared, that notwithstanding this agreement, the property was to remain Ragland's exclusively, by virtue of his purchase at the sheriff's sale, and his title thereto was to be "in no manner thereby affected or impaired." Many witnesses, who were present at the sale, testified, without exception, that they knew of no circumstance tending to prove collusion between Ragland and Pool, or any device of either to depreciate the property. While they differ considerably in their estimates of the cash value of the land, no one says the price was inadequate, considering the incumbrances of dower and the attachment of Mrs. Susan Pool. The agreement alone is relied on, as suggestive of fraud. Pool was evidently indulging a speculative hope that the price of land had not really fallen so low; and Ragland, not knowing what better to do, was willing to take the chance of a larger payment on his demands. Pool was hopelessly insolvent, even to Ragland, though perhaps he was not entirely conscious of it; and Ragland employed him for one year, to see if he could not aid him in disposing of the property to a better advantage. This is the substance of their contract. No resale was made. No entanglement of the title to the property, in consequence of the agreement, is shown. It is not made to appear that any other creditor, or person interested, has suffered in any way which could have been helped. Rogers, who agreed to pay a large

[Whitfield *v.* Fulford's Administrator.]

price for a portion of the land, has been unable to pay anything, notwithstanding he has had a long credit. We think the chancellor erred in finding fraud on the part of Ragland. *Montgomery's Executors* v. *Kirksey*, 26 Ala. 172.

The prayer of the bill is not defective. The complainant has only a right to enjoin a levy and sale of the property, once sold, under any execution on Cantrell's judgment. This he specifically asks for.

The decree is reversed, and, lest we might do injustice by rendering a decree here, the cause is remanded.