# Port of Mobile *v.* Louisville & Nashville Railroad Company.

*Bill in Equity to Enjoin Enforcement of a Municipal Ordinance.*

1. *Railroad Company; charter rights; franchise; city as agent of the State.*—Where the original charter of a railroad company, granted by the State legislature, authorizes the company to build its track across or through any street or highway, subject to the limitation that the public use thereof be not unnecessarily or materially impaired, and an amendment to the charter provides that any incorporated city or village on its line may grant to the company any rights, privileges or franchises in reference to the construction, maintenance and management of its cars, locomotives and its business within the limits thereof, a grant by a city, in the form of a city ordinance, to such railroad company of the right to build a track with sidings and turnouts for its business purposes, along a business street in said city, is a franchise, in the proper sense of the term; is the act of the State, through its agent, the city; is irrevocable and is protected from impairment by both State and Federal Constitutions. (The charter, and grant by the city, were in force before the present constitution of 1875, prohibiting irrevocable grants of special privileges of this nature, went into operation).

2. *Railroad company; grant to by city construed.*—Where the city ordinance granting the right to the railroad company to lay its track through the street, thereby confirming its naked right of transit under the original charter, subject to the limitation that the public use thereof be not unnecessarily or materially impaired, adds "with the necessary

sidings and turnouts," these to be laid in such manner as the railroad company might deem "expedient and necessary for its business and interests," there is conferred on the railroad company an irrevocable franchise, giving it the right to load and unload freight at its sidings and turnouts constructed on such street, subject to the limitation only that the use of the street by the public should not be unnecessarily or materially impaired. ·

3. *Grant to railroad company by city; practical and long continued construction of.*—The practical and long continued construction of a grant, acquiesced therein by the public, and not denied by those adversely interested, is of the strongest evidence that it has been rightly interpreted.

4. *Grant to railroad company by city; destruction of franchise by city ordinance.*—A city ordinance having for its purpose and effect the destruction of an irrevocable valuable franchise belonging to a railroad company, and raising no question of police power, abatement of nuisance, or regulation of an admitted right, is void.

5. *Same; destruction of franchise by city ordinance; injunction to restrain.*—Where a city attempts to destroy, by enforcement of an ordinance, the franchise of a railroad company in which the public has an interest, and where the injury to the company will be irreparable, the validity of the franchise depending upon the construction of a grant from the city authorized by the company's charter, the railroad company need not establish its right at law before equity will interfere by injunction to restrain the enforcement of the ordinance; the construction of the grant being for the court, the right of the company is not in law doubtful.

6. *Same.*—Where a city attempts unlawfully to destroy the franchise of a railroad company, a court of equity will not refuse to interfere by injunction, for the reason that the attempted destruction of the franchise is accompanied by acts constituting personal trespasses.

7. *Same.*—Where a city attempts by an ordinance unlawfully to destroy the franchise of a railroad company, a court of equity will not refuse to interfere by injunction for the reason that the ordinance is *quasi* criminal in character.

APPEAL from Mobile Chancery Court.
Heard before Hon. THOMAS W. COLEMAN.

R. H. CLARKE, for appellant.—1. The bill seeks to enjoin the commission of a series of personal trespasses, which are threatened.—*M. & W. P. R. R. Co. v. Walton*, 14 Ala. 207; *Burnett v. Craig*, 30 Ala. 135. 2. The proceeding which the bill seeks to enjoin is of a *quasi* criminal nature, with which a court of equity can not interfere.—*Burnett v. Craig, supra;* *Moses v. Mayor of Mobile*, 52 Ala. 198; *M. & W. P. R. R. Co. v. Walton, supra;* 1 Dill. on Munic. Corp. 319–23; Code of 1876, § 616, subd. 1. 3. The allegations of the bill do not make out a clear legislative grant of the right to use the streets as claimed. 4. The special privilege claimed as granted by the municipal ordinance has not been established by the judgment of a court of law.—*Moses v. Mayor of Mobile, supra;* Acts 1866–7, pp. 400, 346, 352–6; *R. R. Co. v.*

*Walton, supra;* High on Inj. § 1243; *Mathews v. Kelsey,* 58 Maine, 56; 2 Wood's R'wy Law, 986; 2 Dill. on Munic. Corp. § 705; *Perry v. R. R. Co.,* 55 Ala. 413, 424–5; *Mayor v. Waring,* 41 Ala. 139; *Mayor v. Radecke,* 49 Md. 217; *Osborn v. The Bank,* 9 Wheaton, 738; *Quintini v. Mayor,* Sou. Rep. vol. I, 625.

GAYLORD B. CLARK, and F. B. CLARK, JR., *contra.*—The damages which complainant R. R. Co. will sustain by the enforcement of the ordinance are irreparable. The attempted enforcement would lead to a multiplicity of suits. Whenever it is legally certain that the *right* exists, the court will exercise its protective power to prevent by continuous acts the destruction or impairment of that right—*Waring v. Mayor,* 41 Ala. 147; *Waring v. Mayor,* 8 Wall. 110; *Mayor v. Radecke,* 49 Md. 217; s. c., 33 Am. Rep. 239; *Osborn v. The Bank,* 9 Wheaton, 738; *Quintini v. Bay St. Louis,* 64 Miss. 483; s. c., 1 Sou. Rep. 625. There is a vested right in the railroad company which is sought to be destroyed by the ordinance. This right has been used eighteen years continuously by the railroad company.—*Goodyear v. Kelly,* 4 Blatch. 271; *Forbes v. Waugh,* 2 Monk. 512; *L. I. R. R. v. Marquand,* 6 N. Y. Leg. Ob. 160; *Pease v. Christ,* 31 N. Y. 141; *Coleman v. Grubb,* 23 Pa. St. 393; *French v. Pearce,* 3 Conn. 439; *Farrar v. Rowley,* 2 La. An. 479; *Sadler v. Robinson,* 2 Stewart, 520; *City of Chicago v. Sheldon,* 9 Wall. 50–54.

SOMERVILLE, J.—The present bill is filed by the Louisville & Nashville Railroad Company against the Port of Mobile to enjoin the enforcement of an ordinance of that municipality, which declared it unlawful for any person or corporation to load or unload cars in the public streets of the city, under a penalty of not less than twenty-five dollars for each and every violation of the provision. The ordinance excepts cotton, coal and ice in certain localities, but this exception has no material bearing on the present controversy.

The bill claims for the complainant a vested franchise to exercise the right of loading and unloading freight along the line of its track constructed through Commerce street in said city, and that the enforcement of the ordinance in the manner which has been threatened by the municipal authorities, will operate as a total destruction of this valuable franchise, which the company had been peaceably exercising for about eighteen years. It is averred that the ordinance in contro-

versy is the exercise of unauthorized municipal power, and is, therefore, void; and that the defendant corporation, the Port of Mobile, is insolvent, and the public officers and others who have undertaken to enforce the ordinance, by the threatened arrest of the complainants' employees, are pecuniarily irresponsible, and facts are stated from which it is made clear that the injury which will be suffered by the complainant in the abrogation of this right, and the consequent paralysis of its business, will be irreparable, and can not be recompensed by suits for damages at law.

We, *first*, inquire as to the origin and nature of the right or privilege claimed by the complainant; *second*, whether the ordinance in question operates as an illegal interference with it; and *third*, as to the jurisdiction of a court of equity to interfere by the aid of injunctive relief.

1. The basis of the alleged right in the complainant is, a grant by the City of Mobile, in the form of an ordinance, passed in September, 1869, for the particular purpose, as the bill alleges, of enabling the railroad to reach the stores and warehouses situated on Commerce street—this grant being made under the authority of the charter of the railroad company created by legislative enactment. The complainant, as the owner of the charter of the New Orleans, Mobile & Chattanooga Railroad Company, is shown to be entitled to all the rights vested in that corporation. The charter of the latter company, enacted in November, 1866, expressly authorized the construction of its road across or through any street or highway, the only limitation upon the right being that the usefulness and convenience of such street or highway to the public should not be unnecessarily or materially impaired. Acts 1866–67, pp. 6–15, sec. 13. An amendment to this charter, approved February 12, 1867, contained the following provision: "That the said company is hereby authorized and empowered to obtain, by *grant or otherwise*, from any incorporated city or village within the State, that may be situated upon or at the intersection or termini of any of its railroads, *any rights, privileges, or franchises* that any of said corporated cities or villages *may choose to grant* in reference to the construction, maintenance and *management* of the railroad of said company, its depots, *cars, locomotives*, and *its business* within the limits of such incorporated city or village, as hereinbefore named, is hereby authorized and empowered to grant to said company any such rights, privileges and franchises as it may deem proper and advisable; and

such *privileges and franchises when granted* to and accepted
by said company from any such incorporated city or village,
*shall be deemed and taken as rights, privileges and franchises
vested and confirmed in said company, and not liable* there-
after *to be revoked, changed, injured or impaired*, except
with the consent of said company."—Acts of 1866–67, p. 400,
sec. 5.

That the legislature, under the general police power in-
herent in the State, had the constitutional power to authorize
the city of Mobile to grant the right to construct a railroad
track, upon which steam engines are operated, across and
through the streets of that city, must be conceded. And
after such permission it would lie in the mouth of no one to
complain that the changed use of the street would *per se* be a
nuisance.—*Perry v. New Orleans, Mobile & Chat. R. R. Co.*
55 Ala. 413.

Under the authority thus conferred in the charter of the
company, the city of Mobile, on September 7, 1869, passed
an ordinance by which it "granted" to the railroad the right
of way through certain streets, including "also the right to
lay a single track, *with the necessary sidings and turn-outs*
from the northern boundary of its depot  . . .  through
Commerce street  . . .  in such manner as said company
may deem expedient and necessary for its business and in-
terests."

Upon the faith of this grant the track of the road was
constructed through Commerce street, with the necessary
sidings and turn-outs, for the purpose of loading and un-
loading freight and merchandise into and from the various
stores and warehouses located upon said street; and has been
ever since continuously used for this purpose from day to
day, without complaint or objection from any source, for a
period of seventeen or eighteen years, until the attempted
revocation of the ordinance in December, 1886.

The privilege thus granted is obviously a franchise of
the most valuable kind—being one of the most common
examples of such a grant or privilege.—*Davis v. Mayor,*
67 Amer. Dec. 186, 193. It is certainly a "right,
privilege or franchise" within the meaning of the company's
charter, having reference, as it does, to the construction and
management of the railroad, and the conduct of its business
of transportation within the limits of the city of Mobile.
Such a special privilege conferred directly by legislative
enactment, or in a mode provided for by such enactment,

becomes a contract between the State and the corporators, and, as such, has always been protected from impairment by legislative action by virtue of both the Federal and State constitutions, each of which prohibits the passage of any law by which the obligation of existing contracts is impaired or lessened.—*City of Burlington v. Burlington St. Railway Co.*, 49 Iowa 144, s. c. 31 Amer. Rep. 145. " A grant, in its own nature," observes Chief Justice Marshall, in *Fletcher v. Peck*, 6 Cr. 87, 137, "amounts to an extinguishment of the right of the grantor, and implies a contract not to re-assert that right"—a principle which has been held in this State to be applicable to franchises lawfully granted by municipal corporations.—*Stein v. Mayor &c. of Mobile*, 49 Ala. 362, s. c. 20 Amer. Rep. 283. The charter itself declares, moreover, that when once granted, in the mode provided for, such privilege should become a vested and irrevocable right, not liable to be revoked or impaired in any manner.—Acts 1866-67, p. 400, sec. 5. It was not until the present constitution of 1875, now in force in this State, went into operation that irrevocable grants of special privileges, of this nature were prohibited.—*Birmingham Street Railway Cases*, 79 Ala. 469.

2. The privilege in question is none the less a franchise, in the proper sense of that term, because it was granted, not directly by legislative enactment, but by the municipal authorities of Mobile under the sanction of the charter, which is itself a legislative enactment. The grant by the city without such sanction would be unauthorized by law and void. It is, therefore, referable to the charter, and may be considered as a grant by the legislature on the condition precedent that the corporate authorities of Mobile should assent to it, that municipality being regarded as a political agent for the State for this purpose, as it is for other governmental and police purposes. A case strongly analogous may be found in the grant of a license by the court of county commissioners, under the authority of the statute, to establish a toll-bridge, or a ferry, which have been held by this court to be privileges in the nature of legislative franchises, granted directly by the State, and subject in general to be governed by the same principles.—*Harrell v. Ellsworth*, 17 Ala. 576; *Gates v. McDaniel*, 2 Stew. 211; *Mayor v. Rogers*, 10 Ala. 37; 49; *Birmingham Street Railway Cases*, 79 Ala. 465. This principle seems to us to be based on sound and practical reason, and is essentially just in its results. It is a mere

logical sequence of the common adage, *qui facit per alium, facit per se.* An act done by the State through its duly authorized agent, is an act done by the State itself.

3. The chancellor decided that the grant made by the city to the appellee conferred, by necessary implication, not only the right of transit through Commerce Street, but the right to load and unload at the adjacent stores and warehouses. In this conclusion we are disposed to concur, notwithstanding the force of the rule that the charters of corporations are to be construed strictly against the corporators, and what is not unequivocally granted in such acts must be taken to be withheld. The power claimed must, in other words, be granted in clear terms, or else must be *necessarily implied.—Birmingham Street Railway Cases*, 79 Ala. 472. It has been held by a respectable and learned court that the grant to a railroad company of the mere right of transit through the streets of a city would carry as a necessary incident the right to load and unload merchandise, provided ample room was left to accommodate public travel on the street, and the time occupied in exercising the right was reasonably short.—*Matthews v. Kelsey*, 58 Me. 56; s. c. 4 Amer. Rep. 248. The present case does not require us to carry the principle so far. Here the railroad already possessed the naked right of transit. This had been conferred expressly and directly by legislative enactment, as declared in the original charter. The amendment to the charter would seem, therefore, to have in view the giving of some additional right or privilege. It would otherwise have been useless. The language of the city ordinance bears out this view. It not only confers the right to lay the main track through the street, thus confirming what the company already had, but it goes further by adding—" with the necessary sidings and turnouts," and these to be laid in such manner as the railroad company might deem " expedient and necessary for its business and interests." Why, we may ask, give the power to lay these " sidings and turn-outs" along the streets and within the company's discretion, if the right to use them was to be withheld? The right to lay a track through a street implies by necessary implication the right to use such track in the mode ordinarily adopted by railroad companies, and subject to reasonable regulation under the police power of the proper authorities. The right to lay side tracks and turn-outs, in like manner, implies the right to use them, and the only use which could be reasona-

bly contemplated by their construction is for the transportation of goods to and from the adjoining stores and warehouses. Add to this the significant fact that the railroad company, after being placed in possession of its franchise, construed it to confer this right, and exercised it uniformly without complaint or interruption for between seventeen and eighteen years. A contemporaneous construction of a law is of very high authority. The practical exercise of a right under it, acquiesced in by the public, and not denied by those adversely interested, is the strongest evidence that it has been rightly interpreted. The practical construction thus established by years of uniform usage is often allowed by the courts, even in doubtful cases, to have the force of settled law. A like rule prevails in the construction of contracts, the court being always strongly inclined to interpret every agreement as the parties themselves have done by practical usage, regarding their conduct in the every day execution of its terms as an agreed interpretation of them.

Our conclusion is that the railroad company was possessed of an irrevocable franchise, conferred by the city ordinance, giving it the right to load and unload freight at its sidings and turn-outs, constructed on Commerce street, subject to the limitation only that the use of the street by the public should not be unnecessarily or materially impaired.

4. The ordinance of December, 1886, here sought to be enjoined, is a manifest attempt to abrogate this privilege, by declaring its exercise unlawful and fixing a penalty to it. The announced determination of the police authorities to arrest all employees of the road, who seek to exercise the franchise, if executed, must operate its utter destruction. The allegations of the bill, which the demurrer admits to be true, negative all facts from which it is possible to suppose that the purpose of the objectionable ordinance was to abate a nuisance. There is no sort of pretense that it was a mere police regulation. There is no complaint on the subject from those most interested in the use and occupancy of the highway. It comes from those who neither are property holders, nor engaged in business there. Facts, moreover, are averred from which it seems clear that the loading and unloading of cars of freight by the railroad along the street, so far from seriously obstructing travel and traffic by the public greatly facilitate the convenient use of the streets for these purposes, by relieving it of the burden of being constantly crowded with drays and other vehicles. The case, therefore,

raises no question as to a resort to the police power of the city or State to abate an alleged nuisance, or as to an attempted regulation of an admitted right. The purpose of the defendant corporation is obviously to destroy the franchise which it has conferred, and the ordinance under consideration, having this effect, if executed, must be held to be void.

5. The jurisdiction of a court of equity to protect a franchise of this kind from unlawful invasion or disturbance is clearly settled, and has been often recognized by this court as benign and salutary. The value of such a right, or the cost of its unlawful disturbance, can not be reduced to a pecuniary measure. When the purpose is its utter destruction, the duty·to protect becomes correspondingly more urgent and imperative. The ground of its exercise is usually the prevention of irreparable injury, or such as can not be adequately estimated in damages at law; at other times, the avoidance of a multiplicity of suits, and again the abatement of annoyance in the nature of a legal nuisance. Another controlling reason for interference by equity in such cases is, that the public at large have an interest in the protection of such a privilege as well as the parties particularly interested. *Broadway Stage Co. v. The Amer. Society, &c.*, 15 Abb. Pr. Rep. (N. S.) 51. The party aggrieved ·is not required to establish his right at law, before he is permitted to invoke the aid of equity, if such right is clear and free from doubt. The verdict of a jury is only necessary where the right claimed is doubtful. The right is here determined by a municipal ordinance in the nature of both a grant, and a contract, which is in writing. Its construction is for the court, and not for the jury.—*Mayor v. Rodgers*, 10 Ala. 37; *Croton Turnpike Co. v. Ryder*, 1 Johns. Ch. R. 611; *Harrell v. Ellsworth*, 17 Ala. 576; *Newburgh Turnpike Co. v. Miller*, 9 Am. Dec. 274; *Com. v. Pittsburgh, &c., R. R. Co.*, 24 Pa. St. 159; s. c., 62 Amer. Dec. 372; *Attorney-General v. Heishon*, 18 N. J. Eq. 410; 2 Dill. on Munic. Corp. § 907.

6. It is too clear for argument that it is no objection to the exercise of this jurisdiction that the attempted invasion of the franchise sought to be protected is accompanied by acts, which are personal trespasses. A court of equity will not, it is true, interfere to enjoin a mere trespass of an ordinary character, either upon the person or property. The remedies afforded at law are deemed adequate in cases of this kind.—*Montgomery, &c., R. R. Co. v. Walton*, 14 Ala.

207. But the cases are numerous in which the arm of this court has been successfully invoked to enjoin trespasses, which, if unrestrained, would probably result in irreparable mischief, or where such mischief might be completely effected before a trial at law could be had as to the controverted right. Judge Story thus states the rule: "If the trespass be fugitive and temporary, and adequate compensation can be obtained in an action at law, there is no ground to justify the interposition of courts of equity. Formerly, indeed, they were extremely reluctant to interfere at all, even in regard to repeated trespasses. But now there is not the slightest hesitation, if the acts done or threatened to be done to the property would be ruinous or irreparable, or would impair the just enjoyment of the property in future. If, indeed," he concludes, "courts of equity did not interfere in cases of this sort, there would be a great failure of justice in this country."—2 Story's Eq. Jurisp. § 928. The Chancery Court of England had come up to this advanced view of the law as early as the days of Lord Hardwick.—*Coulson v. White*, 3 Atk. 21. And this view is now supported by an unbroken array of uniform authorities, speaking with one voice on the subject.—*Jerome v. Ross*, 7 John's. Ch. 315; s. c., 11 Amer. Dec. 484, *note*, 498–507; *Lyon v. Hunt*, 11 Ala. 295; s. c., 46 Amer. Dec. 216; *Scudder v. Trenton, &c., Co.*, 23 Amer. Dec. 756; *Poindexter v. Henderson*, 12 Amer. Dec. 550; *Burnley v. Cook*, 13 Texas, 586; s. c., 65 Amer. Dec. 79; *White v. Flannigain*, 1 Md. 525; s. c., 54 Amer. Dec. 668. The case of *Osborn v. U. S. Bank*, 9 Wheat. 738, is a familiar and high authority, from one of the greatest judges, for the position that where a trespass, or a series of trespasses operate in effect to destroy or seriously impair the exercise of a franchise, a court of equity will not hesitate to interpose to prevent the apprehended injury by the aid of injunction. And in *Broadway Stage Co. v. The Amer. Society, &c.*, 15 Abb. Pr. (N. S.) 51, it is expressly held that an injunction would lie to restrain the persistent commission of trespasses of a mere personal nature, where they affect a corporate franchise. And the same principle has been recognized by this court in a case where it was sought to enjoin the enforcement of a municipal ordinance, the violation of which was attended with a penalty.—*Moses v. Mayor, &c., of Mobile*, 52 Ala. 198.

The equity of the present bill can be supported upon the ground that the court will lend its aid to prevent the destruc-

tion or serious impairment of a vested franchise, the value of which can not be adequately estimated in damages. The case is strengthened by the further consideration of preventing expensive and vexatious litigation accompanied by a multiplicity of suits, and the insolvency of the defendants, by whom the alleged grievances are threatened,—facts which strongly corrobate the alleged inadequacy of any legal remedy open to the complainant in the courts of law. The records of our courts present few cases of threatened injury so irreparable in nature, or for which a verdict of damages at law would furnish so inadequate compensation.—*Jerome v. Ross*, 11 Amer. Dec. 484, *note*, p. 500-507.

7. The suggestion that the court, under the peculiar circumstances of this case, must abdicate this jurisdiction because of the fact that it is dealing with an ordinance of a municipal corporation of a *quasi* criminal character, the violation of which is made an offense, does not strike us favorably. The power to prevent irreparable injury, flowing from the deficiencies and injustice of the more tenchnical rules of the common law, may be said to be the very life of equity jurisdiction. The court must, therefore, be jealous of its preservation, notwithstanding it may also be cautious in its exercise. Municipal corporations can claim no exemption from being subjected to it. They must stand in our courts upon terms of equality with all other corporations, and with natural persons. Our constitution declares that "all corporations shall have the right to sue, and shall be subject to be sued in all courts, in like cases as natural persons." Const. 1875, art. 14, § 12. The legal effect of this provision is to place municipal corporations, as nearly as practicable, upon a basis of equality in the enforcement and defense of their rights in courts of justice in this State."—*South & North Ala. R. R. Co. v. Morris*, 65 Ala. 193; *Davis v. Mayor*, 1 Duer (N. Y.) 452. And the rule accordingly must apply with peculiar force with us, which is said by Mr. Dillon to be generally recognized elsewhere, that "equity will interfere in favor of or against municipal corporations on the same principles by which it is guided in other cases."—2 Dillon Munic. Corp. § 908.

It can not be tolerated that a municipal corporation in view of these principles, should escape the grasp of a court of chancery, in a clear case of equitable cognizance, by the device of adding a penalty to an illegal and void ordinance, which is designed as a repudiation of its own valid grants

[Forcheimer & Co. v. Port of Mobile ]

or contracts, especially in a case where the public are largely concerned, and a court of law can afford no remedy adequate for the prevention of irreparable injury that would probably result from the enforcement of such an ordinance.

There is nothing in the case of *Burnett v. Craig*, 30 Ala. 135; s. c. 68 Amer. Dec. 115, which is in conflict with the foregoing views, as will appear from the later case of *Moses v. Mayor, &c. of Mobile*, 52 Ala. 198.   The mere fact that an act is criminal does not divest the jurisdiction of equity to prevent it by injunction, if it be also a violation of property rights, and the party aggrieved has no other adequate remedy for the prevention of the irreparable injury which will result from the failure or inability of a court of law to redress such rights.—1 High on Injunc. § 20; *Mayor &c. of Baltimore v. Radecke*, 49 Md. 217; s. c. 33 Amer. Rep. 239; *Third Ave. R. R. Co. v. New York*, 54 New York, 159; *Mayor &c. of Mobile v. Waring*, 41 Ala. 139; s. c. 8 Wall. 110.

The decree of the chancellor, refusing to dismiss the bill for alleged want of equity, and refusing to dissolve the injunction, is in harmony with the foregoing views, and must be affirmed.