[Mayor and Aldermen of Birmingham v. Ala. Gt. So. R. R. Co.]

a perfect equitable claim to the property, as he had paid the amount of his bid in full and had been in possession for many years as owner. The difference between that case and this one is manifest.

When, for any reason, a sale of mortgaged property under an attempted foreclosure, whether by suit or under a power of sale, is ineffectual to cut off the mortgagor's equity of redemption, the purchaser at such sale succeeds to the title and rights of the mortgagee in the property, and may enforce them as the mortgagee could have done, had no sale taken place. The receipt of the purchase-money by the mortgagee operates as an estoppel upon him to claim the benefit of the mortgage as against the purchaser. *Taylor v. Agricultural & M. Assn.* 68 Ala. 229; *Jordan v. Sayre,* 10 So. Rep. (Fla.) 823. Upon like considerations, the payment of a part of the amount bid at a sale under a power in a mortgage, if the sale fails of consummation in consequence of the non-payment of the balance on the bid, operates in equity as an assignment of the mortgage debt to the extent of the amount paid, and to that extent entitles the bidder at the abortive sale to the benefits of the mortgage security. If such bidder at a sale which was never consummated takes possession of the mortgaged premises, his possession is that of a mortgagee before foreclosure. He is, therefore, accountable for rents and profits.

The decree of the Chancery Court is reversed, and the cause will be remanded for further proceeding in conformity with this opinion.

Reversed and remanded.

# Mayor and Aldermen of Birmingham *v.* Alabama G. S. R. R. Co.

*Bill to Enjoin the Enforcement of Municipal Ordinance Regulating Use of Streets by Railroad Company.*

1. *Right of way across streets; limitation of municipal power to control its use.*—A railroad company with its yards on both sides of a street, connected by tracks which it has owned and operated for many years without objection, is invested with the right to the reasonable use and enjoyment of its rights of way, and its yards on opposite sides of the street, with the right to cross the streets with its engine and cars in a reasonable and proper manner; and these rights the mu-

[Mayor and Aldermen of Birmingham v. Ala. Gt. So. R. R. Co.]

nicipality has no power to take away or destroy by any inherent power, or legislative grant of power.

2. *The power of the City of Birmingham under its charter to regulate and control the running of trains across its streets.*—The power of the City of Birmingham, is limited by its charter: "To regulate and control the running of cars or locomotives upon or across the streets, avenues or alleys of said city, and to regulate and control the speed of such cars, engines or trains within the corporate limits of said city," and as is provided by § 1519 of Code of Ala.

3. *Power of the city to regulate the movement of trains, implies right of road to move them.*—The power in the city to regulate the moving of cars across its streets implies the right in the railroad company to move cars, and confers the authority only to prescribe the manner in which they may be moved. The city can not deny the right of the railroad company to cross the street in the legitimate exercise of the demands of its lawful business, but may forbid its stopping its engines and cars across the street in making up a train.

4. *When railroad may operate its cars across 20th street.*—The power to regulate does not imply the power to prohibit. Incident to the ownership and legitimate use of its property, the railroad company has the right, whenever reasonably demanded by the needs of its business, to distribute its cars throughout its yards, and for that purpose to cross Twentieth street, subject to reasonable municipal regulation and control as to the manner of crossing.

5. *Ordinance with several provisions capable of distinct enforcement.* An ordinance with several distinct provisions not dependent on each other, some valid, and others invalid, are capable of distinct enforcement as to those that are valid, while the invalid may be rejected, as if enacted by several ordinances.

APPEAL from Birmingham City Court.
Heard before the Hon. H. A. SHARPE.

JAMES J. BANKS, and GREGG & THORNTON, for appellant.

1. Equity will not, as a general rule, interfere by injunction, with the enforcement of a municipal ordinance.—*Moses v. Mayor and A. of Mobile*, 52 Ala. 198.

2. Equity will, however, interfere to protect the franchise of a corporation from infringement.—*Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 110.

3. Private corporations take their franchises subject to the reasonable burdens incident to the growth and development of the country. All private rights in property are subject to the governmental "Police Power."—Elliot on Streets and Roads, pp. 58, 59, 170, 171, 600 and 601; *State v. St. Paul, etc. R'wy Co.*, 35 Minn., s. c., 59 Am. Rep. 313 ; *Thrope v. R. R.*, 27 Vt., 140, s. c. 62 Am. Dec. 625 ; *Buffalo R. R. Co. v. Buffalo*, 5 Hill, (Q. Y.) 209 ; *Richmond, etc. R. R. v. Richmond*, 96 U. S. 521 ; Hoar and Benis on Municipal Police Ordinance, 238.

4. A municipal ordinance will not be declared unreason-

[Mayor and Aldermen of Birmingham v. Ala. Gt. So. R. R. Co.]

able unless the case is very plain and clear.—*Huvblock v. R. R. Co.*, 18 N. W. Rep. 106. And whether reasonable or not, is a question for the court, and not the jury, and evidence to the jury is admissible.—1 Dillon on Munic. Corp. (4th ed.) 327.

5. Where the municipal legislature has authority to act, it must be governed, not by our discretion, but by its own, and we shall not be hasty in connecting them or being unreasonable in the exercise of it.—*Lowrie, J. & Fischer v. Harrisburg*, 2 Grant (Pa.) cases ; *St. Louis v. Webber*, 44 Mo. 547 ; *Cone v. Robertson*, 5 Cust. (Mars) 438 ; See note to 327 of Dillon on Munic. Corp. page 404, (4th ed.)

6. The constitutional inhibition against taking property without due process of law, does not effect the public power of the State.—*Barbier v. Connelly*, 113 U. S. 31 ; *Wrigler v. Kansas City*, 123 U. S. ; *Fortiberger v. Hyde Park*, 97 U. S. 659.

7. The inhibition against impairing the obligation of a contract does not effect the public power of the State. *Butchers v. Crescent City*, 111 U. S. 751 ; *Stone v. Mississippi*, 101 U. S. 866, (916) ; *Gas Co. v. Gas Co.*, 115 U. S. 650 ; *Boston Beer Co. v. Maas*, 97 U. S. 32.

8. The provision relating to the regulation of inter-state commerce does not effect the public power of the State. *U. S. v. Derritt*, 76 U. S. 9 Wall. 41 ; License Tax Cases, U. S., 9 Wall. 462.

A. G. SMITH, for appellee.

1. The court did not err in overruling the demurrer, and the injunction was properly granted.—High on Injunctions, vol. 1, § 590 ; High on injunctions, vol. 2, § 1247 ; *Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 115 : *City Council of Montgomery v. L. & N. R. R. Co.*, 84 Ala. 127 : *City of Baltimore v. Scharf et al.*, (Md.), 10 Amer. & Eng. R. R. Cases, 241 ; *Attorney-General v. Chicago & Evanston R. R. Co.*, (Ill.) 26 Amer. & Eng. R. R. Cases, 428 ; Street Railway Cases, 79 Ala. 465.

2. The court did not err in refusing to dissolve the injunction, on motion of the appellant.—*Jones v. Ewing et al.*, 56 Ala. 360 ; *Chambers et al. v. The Alabama Mining Co.*, 67 Ala. 353 ; *Harrison v. Yerby*, 87 Ala. 185 ; *Montgomery v. L. & N. R. R. Co.*, 84 Ala. 127.

3. The city of Birmingham is estopped from enforcing this ordinance, under the allegations of the bill.—*Forney v. Calhoun County*, 84 Ala. 215 ; *A. G. S. R. R. Co. v. S. & N.*

[Mayor and Aldermen of Birmingham v. Ala. Gt. So. R. R. Co.]

*R. R. Co.,* 84 Ala. 570 ; *Caldwell v. Smith,* 77 Ala. 157 ; *Wilder v. Wilder,* 89 Ala. 414.

4.  The railroad has acquired rights as to this crossing, which are vested in it as a franchise, and which can not now be summarily disposed of further than is necessary to regulate the movements of the trains for the purpose of making it reasonably safe for the traveling public.—*State v. New Haven & Northampton Co.,* 45 Conn. 331 ; *Quintine v. Bay St. Louis et al.,* 1 Southern Rep. (Miss.) 625 ; *Northern Railroad v. Baltimore,* 46 Maryland, 425 ; *Mobile v. L. & N. R. R. Co.,* 84 Ala. 115 ; *Montgomery v. L. & N. R. R. Co.,* 84 Ala. 127 ; *Mathews v. Kelsey,* 4 American Report, 248 ; *Perry v. Railroad Co.,* 55 Ala. 414.

5.  Appellant, under its charter, may have the right to regulate the movements of the trains of appellee across Twentieth street, but has no authority to prohibit the use of the crossing to appellee.—*Ex parte Mayor, etc., Anniston,* 90 Ala. 516 ; *Ex parte Reynolds,* 87 Ala. 138 ; *Ex parte Burnett,* 30 Ala. 461 ; *Harris v. Intendant, etc., of Livingston,* 28 Ala. 577 ; *Marion v. Chandler,* 6 Ala. 899 ; *Miller v. Jones,* 80 Ala. 89.

HEAD, J.—The bill is filed by the Alabama Great Southern Railroad Company to enjoin the enforcement of the following ordinance adopted by the mayor and aldermen of Birmingham, a municipal corporation:

"It shall be unlawful to make up any train across Twentieth Street, by switching or otherwise, at any time, or to switch back and forth across said street for the purpose of distributing cars between the hours of 6 in the morning and 11 at night, but it shall not be unlawful to use the tracks on said street for placing cars on bulk tracks in the yards. No obstruction shall remain on, or be across said Twentieth street for a longer time than three minutes. Any person violating this section shall be fined on conviction not less than $1.00 nor more than $100.00."

The bill avers that complainant is a railroad corporation, duly chartered under the laws of Alabama, owning and operating a railroad from Chattanooga, Tenn., to Meridian, Mississippi, passing through the States of Tennessee, Georgia, Alabama and Mississippi, and connecting at its termini with other railroads, by association, or otherwise, in the interchange of freight and passenger business, thus reaching and extending the commercial relations of the States, wherein its road is located, into many of the States of the union, and affording transportation facilities to many of the States into

the four States wherein the road is located; also affording transit across said four States to the freight and passenger traffic from many other States. The complainant's road was constructed under and by virtue of the powers contained in the charters of certain other railroad companies in the bill mentioned, and complainant now owns the road with all the rights, franchises, privileges and immunities of said other corporations. The complainant's predecessor who constructed the road was authorized to put down and use along the main line, single, double or treble tracks, and whenever necessary to intersect or cross any road or highway, to construct across or upon the same; provided the company should restore the road or highway to its former state or in a sufficient manner not to impair its usefulness. The company was also authorized to lay out the road so as not to exceed 150 feet wide. The road was completed in the year 1871, and has since been in operation to the present time. Prior to construction, a right of way, 100 feet wide, was obtained through section 36, township 17, range 3 west, which was a part of a field used for agricultural purposes, with no houses or habitations upon it. When the South and North Alabama Railroad Company determined to build its line of road so as to cross complainant's line about Elyton, the Elyton Land Company was formed for the purpose of building a city upon what is the present site of the city of Birmingham, and to that end acquired the title to the said land in section 36 township and range aforesaid, which now forms, in part, the site of said city; and entered into a contract with the said South and North Alabama Railroad Company by which that road crossed complainant's line of road at the present crossing, which is within the city of Birmingham; and complainant allowed that company to use and occupy a part of its right of way; and complainant acquired the right of way over the strip of land 35 feet wide immediately west of, and adjoining, its former right of way, and went into the use and occupation of the same. The Elyton Land Company then caused the city of Birmingham to be surveyed and a map thereof made, which survey and map were made with the centre line of complainant's road as the base line and foundation thereof, and now so remain; and said company designated on its map Twentieth Street, as now located, so as to cross complainant's line of road and its said right of way, as acquired by it, in said section, township and range; and also designated on said map the lands extending from First Avenue North to First Avenue South, as Railroad Reservations, the same being 1,000 feet wide,

including the rights of way already mentioned, and extending through the proposed city. Thereafter the city of Birmingham was built up, as then surveyed and located, on both sides of the roads and rights of way of complainant and said S. & N. R. R. Co., and gradually grew from a few houses, from year to year, into its present proportions. The bill also avers that complainant has remained in possession of the said rights of way for many years, and during the year 1886, it caused to be made a plan for the improvement of its yards and property within the city, adjoining said Twentieth Street, and in the year 1887, completed said improvements and built its yard at a cost of not less than $15,000.00; that the same was built with the full knowledge and assent of the authorities of the city, who in no manner, objected thereto; and in the year 1889, the city, with the co-operation of complainant and the S. & N. R. R. Co., laid down granite block pavement over said street crossing, at great expense to complainant, as it became necessary for it to take up and relay its tracks in the most permanent and durable manner possible. The bill further avers that complainant is using four tracks across Twentieth Street on its own right of way; that its yards north and south of the street are immediately contiguous to it, and in order to use its yards it is necessary and absolutely essential that it be able to cross the street, and that a denial of such right, in the manner proposed by said ordinance, would so cramp its operations that it could not use its said road to any advantage, and would utterly cripple any attempt to switch, or to use its property for distributing cars; for, it is averred, the use of its property in its yards involves, and is forced to involve, switching at all hours of the day, whenever the same is required for the business of its patrons; that if the said ordinance is enforced it will have the effect to compel the complainant to remove its said yards from the corporate limits of the city, where they would fall within other suburban towns now building up and adjoining Birmingham, along the line of complainant's road. It is also averred that complainant's trains arrive from time to time, in the city, having many cars for different roads and States, and are stopped in said yard north of Twentieth Street, which has been built for this purpose, and so used without objection; and that it is absolutely necessary for its cars to be switched, in order that each may be sent to its destination; and absolutely necessary to switch across Twentieth Street within the usual working hours of the day for such purpose. The bill further avers that there is no necessity for the ordinance

complained of, inasmuch as since the street has been paved with Belgian block the safety to travel across the street has been greatly promoted, and there exists across the tracks at 22nd street, in the city, a bridge which is used by pedestrains, vehicles and the Highland Avenue and Belt Railroad Company, and there is now building across the tracks upon 21st street, a bridge which will be used for pedestrains and vehicles, and will enable all parties who do not desire to cross at Twentieth Street to safely cross from the north to the south side and back; and that there are other streets opened across the railroads which can be used; that the city has already provided by ordinance all necessary and reasonable regulations of the use of said street by trains and cars of railroads, by providing that the companies must keep lights and flagmen and shall have a watchman to precede every train that crosses the street, which regulations have been and are being observed by the complainant.

The bill prays that the ordinance be declared unreasonable and void, and that its enforcement be perpetually enjoined. The defendant demurred, and also moved to dissolve the temporary injunction for want of equity in the bill, and on the denials of the answer. The defendant appeals from a decree of the court overruling the demurrers and refusing to dissolve injunction.

It would seem unnecessary to discuss at length, or cite authorities to support, the proposition that, upon the facts averred in the bill, which, upon demurrer, must be taken to be true, the complainant is invested with the ownership and right to the reasonable use and enjoyment of its rights of way, and tracks which cross Twentieth street, and its yards on each side of the street; and, in the exercise thereof, the right to cross the street with its engines and cars in a reasonable and proper manner; and that these rights the city of Birmingham has no power to take away or destroy, by virtue of any power inherent in the municipality, or expressly conferred upon it by legislative grant. We do not inquire how far the sovereign power of the State might be exercised to prevent the use of the complainant's yards, within the city, for the purposes for which they were acquired and built and are now being used, or how far that power might be delegated by the State to the municipal corporation itself. It is enough, in the present case, that no such power or authority has been conferred upon the city, and that the extent of its authority, in the premises, is only that conferred by its charter, viz: "To regulate and control the running of cars or locomotives upon or across the streets, avenues or alleys

of said city, and to regulate and control the speed of such cars, engines or trains within the corporate limits of said city;" and, as provided by section 1519 of the Code, "to regulate the running of railroad trains or engines within the corporate boundaries, limiting the moving or running thereof to a speed of not more than four miles per hour; and to prohibit the standing thereof on or across the streets or highways within the corporate boundaries." It is not claimed by the city that it can do more than these statutory provisions authorize; nor is it denied by the complainant that the city may exercise the power conferred by these provisions. The question, then, is, whether the adoption of the ordinance assailed is a valid exercise of the power to "regulate and control the running of cars or locomotives upon or across the streets, avenues or alleys of said city."

The ordinance is divided into three distinct provisions, which may be stated as follows:

1. It shall be unlawful to *make up any train* across Twentieth street, by switching or otherwise, at any time. 2. It shall be unlawful to *switch back and forth* across said street, *for the purpose of distributing cars*, between the hours of 6 in the morning and 11 at night, but it shall not be unlawful to use the tracks on said street for placing cars on the bulk tracks in the yards. 3. No obstruction shall remain on, or be across said Twentieth street for a longer time than three minutes.

We lay down as a general proposition that so far as the city of Birmingham, invested with the power to regulate and control the running of cars, &c., has the right to interfere, the complainant, by virtue of its franchises and ownership and enjoyment of its rights of way, tracks and yards, acquired at the time and in the manner stated in the bill, has a right to move its engines, cars and trains across Twentieth street to the extent reasonably necessary to the operation of its road, and the use of its yards, in the transaction of its business ordinarily arising and reasonably necessary to be transacted therein; and that any ordinance of the city denying that right would be unauthorized and of no effect. The power to regulate the moving of cars across the street implies the right in the railroad company to move them, and confers the authority only to prescribe the manner in which they may be moved.

We find considerable difficulty, from the generality and meagerness of its terms, unaided by any averment explaining them, in determining just what the first provision of the ordinance means to prohibit. If it means that a railroad

company shall not carry a car or cars from one side of the street to the other, across the street, for the purpose of being made a part of a train being made up at some place in the yards outside the limits of the street, we have no hesitation in pronouncing it unauthorized, as being a denial of the right of the company to cross the street in the legitimate exercise of the demands of its lawful business; but if it means, on the contrary, that the company shall not stop its engines, cars or trains, on or across the street, in the operation of making up a train, we think the regulation a just and reasonable exercise of municipal control. Construing it to mean that which the city authorities were lawfully authorized to ordain, we place upon the provision the last interpretation, and, so interpreting it, hold it to be a valid exercise of municipal power. We know from common observation and experience, that persons engaged in making up trains on railroads sometimes stop the cars, and construct the trains, in or across public thoroughfares; and sometimes, in making up trains, move the engine and cars partially across a street in order to recover a car or cars located near by, and when recovered, stop the train on or across the street, reverse the movement and proceed the other way; and these operations are repeated in rapid succession, virtually obstructing the street against the public until the train is made up and moved away. It is the purpose of the first provision of the ordinance, in question, to prevent abuses like these, and so far as it tends to that end should be enforced.

The second provision of the ordinance is also not free from difficulty in determining its meaning. The prohibition is against switching back and forth across the street, for the purpose of distributing cars, between designated hours, comprising practically all the hours of the day, except that the tracks may be used for placing cars on bulk tracks, in the yard. We understand a switch, in railroad parlance, to mean the appliance used to connect two tracks of railway, or by which one track is made to join another, so as that cars may be transferred from one track to the other; and it would seem that switching, literally interpreted, means the act of transferring engines and cars over the switches from one track to the other. We know, however, that switches, or switch stands, are not usually located in the streets of cities, and can not suppose that the ordinance in question means other than that it shall be unlawful for an engine or cars to be run or moved back and forth across the street for the purpose of distributing cars. In other words, the effect

[Mayor and Aldermen of Birmingham v. Ala. Gt. So. R. R. Co.]

of the provision is, as we read it, that cars shall not be moved from one side of the street to the other, across the street, for the purpose of being distributed in the yards; and this, without regard to whether they are stopped upon the street or not, in the operation. Thus construed, our opinion is that it absolutely prohibits crossing the street for the purpose specified, and does not merely regulate it. Incident to its ownership and the legitimate use and enjoyment of its property, complainant has the right, whenever reasonably demanded by the needs and exigencies of its business, to distribute its cars throughout its yards; and whenever necessary for that purpose, it has the right to cross Twentieth street, subject to reasonable municipal regulation and control as to the manner of crossing. To prohibit entirely is not regulation. Such is the effect of the second clause of the ordinance, as it is presented to us, without any averment of facts showing that a different meaning attaches to the expression "switch back or forth" across the street. When the cause is tried upon issues formed upon the bill and answer, the question may be differently presented.

It is not insisted that the third clause of the ordinance is not within the power of the city to ordain and enforce. A provision that no obstruction shall remain on or across the street for a longer time than three minutes is a valid regulation.—Horr & Bemis, Mun. Pol. Ord., § 239; *Railroad Co. v. Jersey City*, 47 N. J. Law, 286.

The facts averred in the bill showing the necessity for injunctive relief against the enforcement of the ordinance bring the case within the influence of *Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 115.

As we have seen, the ordinance is divided into several distinct provisions. These provisions are not made to depend on each other, but are as severable and capable of distinct enforcement as if they had been ordained by several ordinances. In such case, that which is valid may be enforced whilst the rest may be rejected as unauthorized and invalid. We have seen the ordinance in question is valid, except as to its second provision, which is void. The special prayer of the bill is that the entire ordinance be held invalid and its enforcement enjoined; but to this is added the prayer for general relief, under which relief may be obtained against so much of the ordinance as is invalid. The demurrers were therefore properly overruled. The final decree, on the merits, can be so moulded as to preserve the integrity of the ordinance, in so far as it is a lawful and valid exercise of municipal regulation and control.

An order will be here entered modifying the injunction so as that the enforcement of only so much of the ordinance as we have declared void, may be restrained. With this modification, the decree of the City Court is affirmed.

Affirmed.